(124 So. 229)

## LIFE & CASUALTY INS. CO. OF TENNESSEE v. PEACOCK. (6 Div. 419.)

Supreme Court of Alabama. Oct. 17, 1929.

Jacobs & Carmack, of Birmingham, for appellant.

Ewing, Trawick & Clark, of Birmingham, for appellee.

THOMAS, J. The suit was upon a policy of insurance, and resulted in small verdict for plaintiff under the disability clause of said instrument.

 If the complaint was duly challenged by demurrer for lack of averments of fact, that the premiums had been duly paid on said policy, and that the same was in full force and effect at the time of the injury, under rule 45. these facts being fully supplied by the evidence, the overruling of demurrer will not cause a reversal. Best Park Co. v. Rollins, 192 Ala. 534, 68 So. 417, Ann. Cas. 1917D, 929; Vance v. Morgan, 198 Ala. 149, 73 So. 406; Clinton v. Bradford, 200 Ala. 308, 76 So. 74; Birmingham-Southern R. Co. v. Goodwyn, 202 Ala. 599, 81 So. 339; Ex parte Minor, 203 Ala. 481, 83 So. 475, 10 A. L. R. 687. These omitted allegations are supplied by the indisputable or uncontradicted evidence, and no injustice has been done by overruling defendant's demurrer to the complaint. That is to say, assuming that the demurrer efficiently took the stated objection to the complaint, and that it was erroneously overruled, the error was cured as we have indicated.

The important question for decision was raised by objection to the policy in evidence as showing a variance, and by the general affirmative charge. The general proposition insisted upon by appellee is thus stated: That a clause in a policy of accident insurance providing indemnity by reason of the loss of two feet does not limit recovery to a showing *of the loss of two entire feet.* 1 C. J. p. 467, § 175. The disability clause contained in the policy sued upon is:

"If, while this policy is in full force and effect and while there is no default in the payment of premium beyond the four weeks' grace period, the insured shall lose by severance both hands, or both feet, or one hand and one foot, or lose permanently the sight of both eyes, total and permanent disability will be deemed to exist, and one-half of the amount of insurance then payable in the event of death shall be paid immediately upon receipt by the Company of due proof of such loss and surrender of this Policy."

Counsel for appellant, contending for reversible error, in refusing the general affirmative instruction requested under the evidence and the rule of law that obtains (McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135), states the

evidence was that she lost the left foot, but only the toes of the right foot, leaving the right foot seven and a quarter inches long, and in such condition that the insured has reasonably good use of it as a foot, and walks on it with little impediment all the time, though aided by the use of a spring or brace in her shoe. The physician said of this use: She could not walk as good on that foot now as she could before, that her use of it is limited, and she would tire quickly. The only witnesses were the insured's father, the insured, and Dr. J. H. Stephens. The father testified in part as follows:

"That policy was in force and effect and the premiums paid at the time she lost her foot."

` While the said witness was on the stand, he called the insured to the witness stand, and she "got up and walked to the witness stand unassisted and without crutch or other means of assistance."

The father as a witness testfied further:

"My little girl, the plaintiff, walked around unassisted, some 12 or 15 feet just then. She does not have her natural right foot now. A portion of it is gone. All of the toes are gone. I will have her take off her shoe there and show that right foot. * * *

"I could not say how much of the foot is gone, not being a surgeon. There is a portion of it here (indicating) gone. I know all the toes of the other foot are gone. How much of it is gone besides the toes, I cannot say. I have just stated that the toes are all gone. There is still bone up there in the foot. I could not say that the toes are all that is gone. I don't know how much more of her foot is gone. I wasn't at the operation. It will take the surgeon to state that. She does not walk on that right foot all right. She manages to get about, and all that. Sure, she walks on it all the time. She don't have any crutches. She goes to school every day, with no crutch or anything—not while she has the limb on. I mean the left limb. She doesn't need to have any crutches to go to school. The only thing artificial on the right foot, we have to have a spring in her right shoe. There is no part of the right foot that is artificial."

He then measured the plaintiff's bare right foot from the heel to the front, and it showed seven and a quarter inches in length.

Dr. J. H. Stephens, who treated the insured and amputated the toes of her right foot, testified as follows, when asked to look at the right foot of plaintiff and tell what part of the foot is missing:

"There are five bones about this length (indicating) in here (indicating), and five toes that came off. It seems that all the toes are gone. I don't remember whether any of the bones are gone, or not, the metatarsal bones. There isn't anything missing except the toes.

That does not completely destroy the use of the right foot. She can walk reasonably well on the right foot. * * *

"I have no independent recollection whether anything is gone from that foot (indicating right foot) except the toes, but am just judging from the length of it. I could not tell, unless I had an X-ray picture, whether or not any of the other bones were gone. The toes won't ever grow back. It is a permanent disability. She cannot walk as good on that foot now as she could before. I didn't suggest to Mr. Peacock any special shoe, or anything, for this child to walk with, on the right foot. I never made any suggestion about the right foot. * * *

"I would say that she is limited, more or less, from walking, but as to putting anything on there (meaning right foot) would make it better, with just the toes being gone, possibly wouldn't be of much benefit. I think she can walk reasonably well without anything on there. * * *

"I think her walking is limited. Of course, she would easily tire quick."

It is undisputed that the plaintiff lost her left foot entirely, and by the amputation, and her right foot is exhibited to the jury. Plaintiff as a witness was asked if she had special shoes for her right foot, and answered that she had a spring in it: and, when asked if she could "walk barefooted," answered, "I almost always turn over side."

█ Plaintiff and defendant rested their respective case. This was all the evidence on the question of permanent disability and loss by severance of said members by plaintiff. The question of fact for decision was by the jury after inspection of the remaining portion of said right member of plaintiff's body.

█ The liberal construction of insurance contracts, or of ambiguous clauses therein, is to the protection of the insured, and bears some analogy to the liberality of construction given the Workmen's Compensation Act (Gen. Acts 1919, p. 206) to the beneficent purpose of that enactment. This is illustrated by Ex parte Puritan Baking Co., 208 Ala. 373, 94 So. 347, where the loss of one phalange of the finger and a substantial portion of another phalange was compensable as for loss of that finger. Ex parte Gadsden Car Works, 211 Ala. 82, 99 So. 725.

█ It will be noted that the policy does not provide indemnity for the loss of two "entire" feet, nor provide indemnity only when the severance was at or above the ankle; it being stipulated against "the loss by severance of both feet" as a "total and permanent disability deemed to exist." The parties may have stipulated otherwise, and, failing in this, under well-considered decisions of analogous clauses, the insured is not limited to a recovery by showing that both feet have been en-

tirely severed and lost. The provision for indemnity for "loss by severance" of feet or hands was intended to refer to the manner rather than to the exact physical extent of the injury.

The decision in Garcelon v. Commercial Travelers' Eastern Accident Ass'n, 184 Mass. 8, 67 N. E. 868, 100 Am. St. Rep. 540, was that, under a policy providing indemnity in case of the loss of an arm, the insured may recover when his arm has been *amputated below the elbow;* that where a policy provides for payment, etc., for the "loss of one entire hand and one entire foot, or two entire hands or two entire feet," this shows a distinct purpose to stipulate for the loss of two limbs, and not for the loss of "one limb or part of two limbs," holding that the amputation of one arm below the elbow to be the loss of an arm in the common acceptance of those words and their meaning as used in the policy—"which specifies merely the 'loss of an arm,' without mentioning whether the loss is by amputation below or above the elbow joint." This is analogous to the construction given the Workmen's Compensation Act (Gen. Acts 1919, p. 206) by Mr. Justice Gardner in Ex parte Puritan Baking Co., 208 Ala. 373, 94 So. 347.

In Sneck v. Travelers' Ins. Co., 88 Hun, 94, 34 N. Y. S. 545, 549, a little over a half of the hand was cut off, and the portion that remained was declared to be more useful than if the amputation had been made at the wrist; that to the minds of some men, for practical purposes to which the hand is adaptable, there was an entire loss of the use of the hand, "while to others it might seem, *after an inspection of the hand,* and a consideration of the evidence, that neither in its anatomical construction nor in its practical use as a hand was it entirely destroyed." This in effect stated the jury question to be decided under the evidence and after a physical examination of the remaining portion of the member. And such is the case here.

The decision in Columbian, etc., Soc. v. Penn, 133 Miss. 266, 97 So. 673, was under a policy providing indemnity "in event of a complete fracture of arm at or above the wrist"; recovery for fracture of one bone of the forearm may not be had. To like effect was Continental Cas. Co. v. Bows, 72 Fla. 17, 72 So. 278; Metropolitan Co. v. Shelby, 116 Miss. 278, 76 So. 839; Wiest v. Ins. Co., 186 Mo. App. 22, 171 S. W. 570, as to severance at or above the wrist, where the severance was below the wrist.

In the case of Murray v. Ætna Life Ins. Co. (D. C. Mont.) 243 F. 285, the policy providing for the loss of the entire sight of an eye was *reasonably interpreted,* and the sight was deemed lost when there is no ability to distinguish and recognize objects, though light from darkness may be distinguished.

And in Moore v. Ætna Life Ins. Co., 75 Or. 47, 146 P. 151, L. R. A. 1915D, 264, Ann. Cas. 1917B, 1005, the policy provided compensation for accidental loss of a hand by removal at or above the wrist; held to cover accident requiring the removal of all bones of the fingers at the wrist, leaving flesh enough to protect the bones remaining and *the thumb* in stiffened and useless condition. L. R. A. 1915D, 264, note.

These cases establish the proposition that, where the policy insures against the loss of a member, or the loss of an entire member, the word "loss" should be construed to mean the destruction of the usefulness of that member, or the entire member, for the purpose to which, in its normal condition, it is susceptible to application, in the absence of more specific definition in the policy.

There was no reversible error in admitting the policy in evidence or in refusing the general affirmative instruction requested by defendant.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.