CHARLIE RICHARDSON v. LIBERTY LIFE INSURANCE COMPANY.

(Filed 24 May, 1961.)

**1. Insurance § 3—**

   While the court must construe a contract of insurance as written, when the language of the policy is susceptible to two constructions, the court will adopt that construction which is favorable to insured.

**2. Insurance § 37½ — Loss of use of member of body will be construed as loss of such member in absence of restrictive language.**

   The policy in suit provided benefits if insured lost a "hand by severance" and that "loss of four fingers entire of a hand shall be construed as loss of such hand." Insured's evidence was to the effect that insured lost by accidental amputation three fingers of a hand and thereafter, through accident, severed the fourth finger behind the first joint, and that when he used this finger, it swelled some. *Held:* The issue of liability under the policy is for the determination of a jury, since the loss of use of a finger is loss of a finger entire, and the policy, in stipulating that the loss of four fingers entire of the hand should be construed as loss of such hand, does not require that the loss of the fingers be by "severance."

APPEAL by defendant from *Gambill, J.,* 30 January 1961 Civil Term of GUILFORD, Greensboro Division.

Civil action to recover $2,000.00 benefits under an accident insurance policy, heard *de novo* in the superior court on appeal by defendant from an adverse judgment in the municipal court of the city of High Point.

Plaintiff introduced in evidence the accident policy issued to him by defendant. Defendant stipulated that it issued this policy to plaintiff on 23 September 1957, that the policy had been and is now in force and effect, that claim or notice of injury was made to it by plaintiff and received by it, as required under the policy, and that the claim was denied by defendant.

The policy provides that the company will pay the insured for the "Loss of Either Hand by severance — $2,000.00" if the insured shall have suffered such loss while the policy is in force, and shall have survived such loss at least ten days. The policy further provides "that loss of four fingers entire of a hand shall be construed as loss of such hand." The exclusions from coverage in the policy are not relevant in the case at bar.

Plaintiff's evidence consists of the accident policy, a picture of his left hand, and of his testimony. His evidence shows:

He has paid all the premiums on the policy. When defendant issued the policy to him he had all his fingers on his left hand. He worked at the Alma Desk Company, and while at work for it on 24 April

1958, he had an accident when a rip saw cut off three fingers on his left hand — his little finger, his ring finger and his third finger. These three fingers were all severed at approximately the same place. What is left of these three fingers are three small stubs — the little finger stub is about a quarter of an inch long, the ring finger stub is about a half-inch long, and his third finger stub is about three quarters of an inch long.

On 16 July 1960 while sawing off a plywood door with a skill saw at his home, he accidentally severed his fourth finger or forefinger behind the first joint. Two little joint bones stick up on his forefinger. When he uses this finger, it swells somewhat.

Defendant offered no evidence.

The following issue was submitted to the jury, and answered as appears: Did the plaintiff, Charlie Richardson, lose a hand through accident by severance in July 1960? Answer, Yes.

From a judgment in accord with the verdict, defendant appeals.

*Schoch & Schoch By: Arch K. Schoch for plaintiff, appellee.*

*Jordan, Wright, Henson & Nichols By: Charles E. Nichols for defendant, appellant.*

PARKER, J.   Defendant offered no evidence. Its sole assignments of error are the refusal of the trial court to grant its motion for judgment of involuntary nonsuit made at the close of plaintiff's evidence, and the denial by the trial court of its like motion, when it stated it would offer no evidence.

The policy provides that it will pay plaintiff insured for loss of one hand by severance $2,000.00, if occurring while the policy was in force, and if plaintiff survived such injury at least ten days. The policy further provides "that loss of four fingers entire of a hand shall be construed as loss of such hand."

Defendant contends that the word "entire" means "whole" or "total," and, therefore, the four fingers of a hand must be entirely, *i.e.,* wholly or totally, severed to meet the requirements for payment under the policy for loss of a hand. However, when the policy refers to fingers, it does not provide that *severance* of four fingers entire of a hand shall be construed as loss of such hand, but clearly and plainly and in explicit words provides "that *loss* of four fingers entire of a hand shall be construed as loss of such hand." It is to be noted that while the policy provision speaks of the "loss of four fingers entire of a hand," it does not say loss of four fingers entire to the palm of the hand.

It is a thoroughly settled rule in the construction of a policy of in-

surance, which is reasonably susceptible of two interpretations, that that meaning will be given to it which is more favorable to the insured. *Roach v. Insurance Co.*, 248 N.C. 699, 104 S.E. 2d 823; *Electric Co. v. Insurance Co.*, 229 N.C. 518, 50 S.E. 2d 295.

However, we have in mind that it is our duty to construe policies of insurance as written, not to rewrite them. *Scarboro v. Insurance Co.*, 242 N.C. 444, 88 S.E. 2d 133.

Webster's New Collegiate Dictionary, 2nd Ed., 1953, states: "The hand, or *manus*, includes the *phalanges*, or fingers or fingers and thumb; the *metacarpus*, or hand proper; and the *carpus*, or wrist."

The terms of the policy here are reasonably susceptible of this interpretation: The policy insures plaintiff against the loss of either hand by severance, and it insures him against the loss, not severance, of "four fingers entire of a hand," providing that such loss shall be construed as loss of such hand, and such provision as to loss of four fingers entire on a hand is not restricted or modified by the word "severance" appearing in the terms of the policy as to the "loss of either hand by severance."

Counsel have not referred us to a case concerned with an accident policy containing a provision as to the loss of fingers similar to the one here, nor have we after a diligent search found one.

In *Sheanon v. Pacific Mutual Life Ins. Co.*, 77 Wis. 618, 46 N.W. 799, 9 L.R.A. 685, 20 Am. St. Rep. 151, there was a provision for indemnity in case of the loss of "two entire feet." Plaintiff was accidentally shot in the back by a pistol ball which penetrated his spine, and produced an immediate and total paralysis of the lower part of his body, and entirely destroyed the use of both feet. The Court, after quoting the words of the policy to the effect that the company agrees to pay a certain sum if the insured, while the policy is in force, from a violent and accidental injury, which should be externally visible, should "suffer the loss of the entire sight of both eyes, or the loss of two entire hands, or two entire feet, or one entire hand and one entire foot," goes on to say: "This is the language of the policy, and the question is, What does it mean? or What must be understood by it? Is its meaning that the insured is not entitled to recover the insurance money unless his legs and feet have been amputated or severed from his body, or does it mean that the injury must have destroyed the entire use of his legs and feet so that they will perform no function whatever? The contention of the learned counsel for the defendant is that the clause is to be understood in the former sense and implies an amputation or physical severance of the feet from the body, and does not include an injury such as paralysis, though such injury actually deprives the insured of all use of his feet and legs. We cannot adopt

such a construction of the contract. To our minds the loss of the hands and feet embraced in the policy is an actual and entire loss of their use as members of the body; and if their use is actually destroyed, so that they will perform no function whatever, then they are lost as hands and feet. In ordinary and popular parlance, when a person is deprived of the use of a limb, we say he has lost it. This is the ordinary sense attached to the word 'loss,' when used in such a connection. Now, if the feet and hands cannot be used for the purpose of moving about or walking, or for holding and handling things, they are in fact lost, as much as though actually severed from the body. The expression 'loss of feet' would generally be understood to mean a loss of the use of these members; and, if the lower portions of the plaintiff's body and his feet are completely paralyzed, and he is permanently and forever deprived of their use, he has suffered 'a loss of two entire feet,' within the meaning of the policy. This is the proper construction of the words of the contract. It is a forced and unnatural construction of the language, as here used, to hold that it means an actual amputation of these limbs, and does not embrace and include an entire deprivation of their use as members of the body. It is not necessary to go into any recondite or elaborate discussion of the language of the policy, but only to give it its ordinary and popular sense. And, understanding it in that sense, we are very clear that the complaint states a cause of action, and that the demurrer was properly overruled."

In *Sneck v. Travellers' Ins. Co.*, 88 Hun. 94, 34 N.Y. Supp. 545, affirmed in a memorandum decision, 156 N.Y. 669, 50 N.E. 1122, the policy provided for the payment of a certain amount to insured for the "loss by severance of one entire hand or foot." Plaintiff's surgeon testified: "The fingers and heads of all the metacarpal bones were cut off with a planer. . . . A little over half the hand, speaking anatomically, is gone. There are twenty-seven bones in the skeleton of the hand. Thirteen bones are gone entirely, and parts of five more, and the parts of the five are simply the heads of the metacarpal bones and the head of the middle bone of the thumb." On a former trial plaintiff testified he could use the injured hand for certain purposes. On the second trial he testified he had no use of the injured member as a hand, and explained his former testimony by saying he had the use of the whole arm, not the use of the hand. The Court said: "The term 'entire hand' is to be taken in its general acceptation and ordinary meaning. In construing this contract the law does not require an injury which comes within a strictly accurate and technical definition of the words employed, but one which reasonably, fairly, and practically comes within the meaning of the terms employed in their general and

usual meaning and acceptation. In a contract of insurance providing for indemnity for the loss of a limb the compensation to be paid is not merely for the physical pain of its amputation, but principally for the deprivation of its use as a member of the body. It would seem to be an extremely narrow and technical construction of this contract to say that only a physical removal of every particle of that portion of the human anatomy known as the hand would entitle the insured to recover under the clause of the policy now under consideration. Is it not more reasonable and logical to conclude that in the use of the language above referred to the 'entire hand' as a part of the human structure is considered in connection with the use to which it is adapted, and the injury which the loss of such use would entail? Is it not also fair to assume that this was regarded by the parties as the sense in which the contract was to be understood, and was one of the considerations which influenced the insured to enter into the contract?" The Court held that the trial court erred in holding that plaintiff had not suffered the loss "by severance of one entire hand," and was not entitled to recover, and granted a new trial.

In *Life & Casualty Ins. Co. v. Peacock,* 220 Ala. 104, 124 So. 229, there was a policy of accident insurance, which insured, *inter alia,* against the loss by severance of both feet. Plaintiff lost her left foot and the toes on her right foot. The Court after citing authority said: "'These cases establish the proposition that, where the policy insures against the loss of a member, or the loss of an entire member, the word 'loss' should be construed to mean the destruction of the usefulness of that member, or the entire member, for the purpose to which, in its normal condition, it is susceptible to application, in the absence of more specific definition in the policy." The Court upheld a judgment for plaintiff.

*Lord v. American Mut. Acci. Ass'o.,* 89 Wis. 19, 61 N.W. 293, 26 L.R.A. 741, 46 Am. St. Rep. 815, was a suit on an accident insurance policy. The Court said: "But the more serious question is whether the tearing off of three fingers wholly, and a part of the other, and cutting the hand, and destroying the joint of the thumb, as mentioned in the proofs, was the loss of one hand, 'causing immediate, continuous, and total disability' of the same, within the meaning of the contract of insurance. After careful consideration we are constrained to hold that it was a question of fact for the jury; and the jury have found that such loss of the hand was entire. On the part of the defendant it is contended that there is no such thing as the loss of the hand unless the injury is such as to require the amputation of the hand above the wrist. That would be too much of a refinement upon language for practical purposes. The hand was for use; and, if it was injured so as

to become useless as a hand, then the defendant became liable for its loss under the contract."

In *Beber v. Brotherhood of Railroad Trainmen*, 75 Neb. 183, 106 N.W. 168, the Court held: It is for the jury to determine whether a total loss of three fingers and an injury to the remaining finger and thumb, which materially interferes with their use, and a cutting away of a part of the palm of the hand, constitute a total loss of the hand within the meaning of a by-law of a mutual benefit association, which provides indemnity for any member in good standing suffering "by means of physical separation, the loss of a hand at or above the wrist joint."

In *Travellers' Protective Ass'n. v. Brazington*, 71 Ind. App. 130, 123 N.E. 221, the Court held: Constitution of fraternal beneficiary association providing for indemnity "in case of loss of four fingers on either hand by severance" construed to require payment "where, through loss by severance of any material part of each of the four fingers on one hand, and because of such severance, each of said fingers was left in such a condition that it was thereafter practically useless."

In *Noel v. Continental Casualty Co.*, 138 Kan. 136, 23 P. 2d 610, the policy provided "for loss of thumb and index finger of either hand . . . one-half said principal sum." The Supreme Court of Kansas said: "The loss of a member of the body, as used in an accident insurance policy, unless restricted or modified by other language, carries the common meaning of the term 'loss,' which is the loss of the beneficial use of the member. Obviously, this may occur when there is not a complete severance of the member from the body. Citing some thirteen cases." See *Garcelon v. Commercial Travellers' Eastern Acc. Ass'n.*, 184 Mass. 8, 67 N.E. 868, 100 Am. St. Rep. 540; *Sisson v. Supreme Court of Honor*, 104 Mo. App. 54, 78 S.W. 297.

Our case of *Brinson v. Insurance Co.*, 247 N.C. 85, 100 S.E. 2d 246, is apposite. In this case the insurance company contracted to pay plaintiff $2,000.00 for the permanent loss of the entire sight of one or both eyes through external, violent and accidental means. Plaintiff's left eye was injured in a fall from a truck, and as a result he is permanently blind in the injured eye to the extent he cannot distinguish objects or colors or tell the difference between day and night, though he can perceive some movement to the side and discover there is a little light when the sun is shining. The Court after citing plenary authority to the effect that the insured need not be totally blind, but that if he has lost all practical use of his eye, which practical use cannot be restored, he is entitled to recover, for such amounts in effect to the entire loss of an eye. Plaintiff's evidence was held sufficient to entitle him to a jury trial.

*Muse v. Metropolitan Life Ins. Co.,* 193 La. 605, 192 So. 72, strongly relied upon by defendant is clearly distinguishable. There "the policy provides in plain terms that its beneficiaries are entitled to a certain sum for 'Loss of one hand by severance at or above wrist-joint.' "

Plaintiff's evidence shows conclusively that, while the policy was in force, he sustained by accident the loss by severance of three fingers entire, *i.e.,* wholly, totally, on his left hand. His evidence also shows that later, while the policy was in force, he sustained by accident the loss by severance of his forefinger behind the first joint on his left hand, that two little joint bones stick up on this forefinger, and that when he uses this finger, it swells some. We think, and so hold, that there is a loss of a finger entire, *i.e.* wholly, totally, if a sufficient part of it has been destroyed to make it useless as a finger.

To the minds of some men the evidence here and the sight of plaintiff's left hand would warrant the conclusion that there was a total loss of the use of "four fingers entire" as fingers on his left hand, while to the minds of others it might seem that the loss of part of his forefinger on his left hand did not entirely destroy its use as a finger, and, therefore, plaintiff did not have a total loss of the use of "four fingers entire" as fingers on his left hand. Such being the case, plaintiff was entitled to have a jury pass upon the evidence, and the trial judge properly overruled defendant's motions for judgment of involuntary nonsuit.

The judgment below is

Affirmed.