179 So.2d 771

**OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA**

**v.**

**William O. HUFF.**

6 Div. 79.

Court of Appeals of Alabama.

Oct. 5, 1965.

Rehearing Denied Nov. 2, 1965.

Spain, Gillon & Young, and Ollie L. Blan, Jr., Birmingham, for appellant.

Frank Marsh, Bessemer, for appellee.

CATES, Judge.

This cause was submitted on second appeal May 11, 1965. See 42 Ala.App. 156, 156 So.2d 380.

Huff commenced his action by suing on a group policy which provided an eight hundred dollar benefit for, among other things, "irrecoverable loss of the use of a hand." We quote from appellant's brief as follows:

"* * * On December 23, 1959 * * * [Huff's] gloved hand was caught in a steel roller machine and * * * was pulled down into the machine. * * * An amputation was performed on the four fingers of his left hand by Dr. [A. W.] Davidson. There was no injury to the thumb, to the palm of his hand, or to the back of his hand. * * *

* * * * * *

"For the three weeks immediately prior to the trial [Huff] had been working on a Sears & Roebuck building in Vestavia. His work there consisted of welding down flat decking and welding in place verticle 46-inch tubing. He was working on scaffolding about 12 to 14 feet above ground and would climb a ladder to get to the scaffolding. He also helped to carry steel beams over to where the crane could pick them up. These beams were about 20 feet long and weighed around 200 pounds each. He and two other men picked them up and he stated that he carried these beams by using one hand only. He denied that he used his left hand. He also hooked a 4-foot long half inch cable around the beam and then hooked that to the crane. He denied that he used his left hand in this work. He would then hook the eye in cable over the hook on the crane but denied that he used his left hand. When the crane lifted the beam up he

would kick it out of the way with his foot and denied using his hands to push the beam out of the way. He also did some steel erection work at the fertilizer plant.

" * * * he could still weld but not as fast as he used to, because it takes longer to put the electrodes in the torch. * * * he cannot now operate grinders, sanders, rivet hammers or push a loaded wheelbarrow. He says he can't pick up anything heavy in his left hand but can use that hand to support things. He can hold things in place with his left hand in order to weld them if they are not too heavy. He can climb scaffolding and ladders. He also stated that he had trouble picking things up off a counter, cannot put on the right sleeve of his shirt and has trouble tying his shoes. He then denied that he used his left hand at all in working on the Sears building.

* * * * * *

"Dr. A. W. Davidson * * * performed an amputation of the four fingers of the left hand of the Appellee. The index, middle and ring fingers were amputated at the first joint, and the little finger was amputated between the two joints. The Appellee's thumb and the palm and the back of his hand were not injured. * * *

"Q Tell the jury whether, in your opinion, as a doctor, Mr. Huff has some use of his left hand at the present time?

"A Yes, he has.

"Q Tell the jury whether or not he is able to perform work with his left hand?

"A Yes, I would say so.

"Q Would you tell the jury whether in your opinion his left hand has the

appearance that he has used that hand in outside work in performing labor?

"A Yes, it has been used—not as much as this one.

"Q They both give the appearance of having performed outside labor and work?

"A Yes, sir."

And from p. 17:
"The trial judge instructed the jury as to the meaning of the phrase 'irrecoverable'. It was defined as meaning 'that the loss is a personal loss of the functions of that member, or that hand, to the extent that it is of no practical use or benefit and that there is no reasonable hope or expectation of regaining the use of that member.' The judge then defined 'practical use' as follows: 'the law defines practical use as this, capable of being put into practice; it means feasible, it means capable of rendering practical service in many ways or many occupations, many needs or many pleasures or many pursuits.'

"The trial judge also gave Charge 12 requested by Appellant as follows: 'I charge you that if you are reasonably satisfied from the evidence that the plaintiff has any practical use of his left hand, you cannot find for the plaintiff.' "

The jury found in favor of the plaintiff. The trial judge denied a motion for new trial.

Under the opinions of the Supreme Court in Life and Cas. Ins. Co. of Tennessee v. Peacock, 220 Ala. 104, 124 So. 229, and in John Hancock Mut. Life Ins. Co. v. Shroder, 235 Ala. 655, 180 So. 327, we believe that the determination of the gradation in the loss of portions of the hand, e. g., fingers, certainly in this case, was one of fact rather than law. Hence, there was no error

in the trial court's submitting the cause to the jury.

Under the quoted instructions of the court, the determination of practical use was here a question of fact only. See the last paragraph of Richardson v. Liberty Life Ins. Co., 254 N.C. 711, 119 S.E.2d 871, 87 A.L.R.2d 475. The denial of the motion for new trial is merely a re-enforcement of the verdict.

From Citizens' Mutual Life Ass'n v. Kennedy, Tex.Civ.App. (2d Dist.), 57 S. W.2d 265, we quote:

"Plaintiff was a farmer by occupation, and according to his testimony his left hand is now wholly useless in the performance of his work as such farmer and of any other work, although he testified that he could pick up some light object, like a pair of glasses or a piece of paper, by gripping the same between his thumb and the remaining stub of his hand. And his testimony to that effect was corroborated by that of his wife and also by Dr. M. L. Holland, the surgeon who amputated his fingers and treated him for some time thereafter; and also by the exhibition of his hand itself to the jury. * * *

\* \* \* \* \* \*

"The policy did not stipulate that compensation should be paid for the loss of a hand in the event it should be severed from the arm. The stipulation for indemnity for the loss of a hand should be construed as referable to its usefulness, and, if its use was destroyed for all substantial and practical purposes, the condition for the payment of the indemnity was fulfilled. * * * Life & Casualty Co. of Tennessee v. Peacock, 220 Ala. 104, 124 So. 229; * * *."

The judgment below is due to be

Affirmed.