## CB COMMERCIAL/HAMPSHIRE, LLC *v.* SECURITY MUTUAL LIFE INSURANCE COMPANY ET AL.
### (AC 20986)

Spear, Mihalakos and Peters, Js.

Argued November 3—officially released December 19, 2000

*Edward T. Krumeich,* for the plaintiff in error.

*Bernard Green,* with whom, on the brief, was *Marni Smith Katz,* for the defendants in error.

*Opinion*

PETERS, J. This writ of error concerns a rent receivership that was instituted during the pendency of a mortgage foreclosure of a commercial office building. At trial, and in this court, the issues arise out of the receiver's final accounting to the court. The borrower

challenged the validity of two charges against the receivership estate, one for payment of a real estate commission and another for payment of postdischarge management expenses. The court sustained the borrower's objection to those charges. The receiver first appealed and then filed this writ of error to challenge the disallowance of the charges. On procedural grounds, we affirm the ruling at trial.

The defendant in error Security Mutual Life Insurance Company of New York (lender) brought an action for strict foreclosure of a mortgage on a commercial office building (property) in Southport that secured the indebtedness of Kings West Limited Partnership (borrower) and others.[1] On June 7, 1996, in conjunction with that proceeding and in accordance with a stipulation of the parties thereto, the court, *Grogins, J.*, appointed CB Commercial/Hampshire, LLC (receiver), to act as rent receiver. Again at the behest of the parties, on July 1, 1996, the court, *West, J.*, modified that order. On April 7, 1997, after the parties had settled the mortgage foreclosure action, the court, *Rush, J.*, discharged the receiver and ordered a hearing on a final accounting of the receivership.

At the hearing held by the court, *Hon. George A. Saden*, judge trial referee, to review the receiver's final accounting, the borrower asked the court to disallow two items that the receiver had deducted in accounting for the rents that it had collected. These items were (1) the payment of a commission of $56,459.27 to a broker for the leasing of a unit of the mortgaged property and (2) management fees in the amount of $8480 for services rendered subsequent to the termination of the receivership.

The court ruled in favor of the borrower with respect to both disputed items. The receiver sought appellate

---

[1] The lender's complaint also named Charles P. Lemieux III and the Sotavento Corporation as defendants.

review of the court's ruling in this court. We dismissed the appeal because the receiver was not a party to the underlying foreclosure action. *Security Mutual Ins. Co. of New York* v. *Kings West Ltd. Partnership*, 56 Conn. App. 44, 45–46, 741 A.2d 329 (1999), cert. denied, 252 Conn. 928, 746 A.2d 789 (2000). We noted, however, that the receiver might be able to obtain review by recourse to a writ of error. Id., 47 n.4. Pursuant to Practice Book § 72-1 (a), the receiver then brought a writ of error to our Supreme Court, which transferred the writ to this court.

In its writ of error, the receiver renews its challenge to the court's disapproval of its accounting with respect to the commission that it paid and the management fees that it charged against the receivership estate for services rendered after the termination of the receivership. In addition, with respect to each disapproval, it contests the validity of the court's order requiring reimbursement to the receivership estate.

Our review of the receiver's claims is controlled by the same rules of appellate procedure that would have been applicable on direct appeal.[2] When a writ of error is addressed to our Supreme Court, and then transferred to this court, we do not hear the case de novo. The rules set out in Practice Book § 60-5[3] govern and limit our review of the merits of a writ of error.

---

[2] Pursuant to Practice Book § 72-4, in the absence of a contrary statute or rule, "the prosecution and defense of a writ of error, once filed, shall be in accordance with the rules for appeals."

[3] Practice Book § 60-5 provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . .

\* \* \*

"If the court deems it necessary to the proper disposition of the cause, it may remand the case for a further articulation of the basis of the trial

REAL ESTATE COMMISSION

The receiver's principal claim is that the court improperly required it to reimburse the receivership estate for the receiver's payment of a real estate commission in the amount of $56,459.27 to its affiliate, CB Commercial Real Estate (broker). The court found that a payment in that amount had been made. It held, nonetheless, that the payment was unauthorized because (1) the order appointing the receiver did not "specify any authority for payment of a commission" and (2) a modification of the order appointing the receiver required prior court approval of expenses exceeding $1500.

At trial, Ronald R. Macklin, the senior vice president of the receiver, testified about the circumstances giving rise to the payment of the commission. During the receivership, a vacancy in the property had occurred and had been filled. There was contradictory testimony at trial about the role of the broker in filling the vacancy. The court's memorandum of decision did not resolve that factual dispute. The record is clear, however, that the receiver never sought prior court approval before its payment of the commission to the broker.

The receiver challenges the validity of the court's conclusion that the receiver lacked authority to pay any real estate commission, either as a general matter or as a result of its failure to obtain prepayment approval by the court. The issues raised by the receiver involve questions of law concerning the proper construction of the various court orders that defined the scope of the rent receivership. We agree with the receiver, therefore, that, prima facie, such questions are entitled to plenary review by this court. See, e.g., *Crandall* v. *Gould*, 244 Conn. 583, 590, 711 A.2d 682 (1998).[4]

court's factual findings or decision.

"It is the responsibility of the appellant to provide an adequate record for review as provided in Section 61-10."

[4] The receiver claims, devoid of any citation of authorities, that the court improperly denied it the opportunity to testify about its understanding of

The court resolved the issues of scope against the receiver on the ground that the receiver had no specific authority to pay commissions. Concededly, although nothing in the original order so states, the order does authorize the receiver to engage, inter alia, in "the negotiation and execution of leases."

The court also interpreted a modification of the receivership order as a limitation on the receiver's power to act without court preapproval. The modification order arose, however, in the context of a particular financing transaction and arguably had no application under the circumstances of this case.[5]

The receiver maintains that the court was required to approve the payment of the real estate commission. In support of its contention that it had authority to pay the commission, the receiver argues the following: (1) the receivership orders conferred express and implied authority on the receiver to pay a commission; (2) the receiver had authority to accept executory contracts, including a prior listing agreement, and that it accepted the listing contract and relied upon it in exercising its authority in paying the commission; and (3) the receiver was not required to seek judicial preapproval because any such limitations in the modified order did not apply to operating expenses. Even if payment of the commission was incorrect, the receiver argues that the court should have ratified the payment because (1) the receiver was entitled to the benefit of the equitable

the scope of its authority under the receivership. Because this claim is inadequately briefed, we decline to review its merits. See *Keeney* v. *Old Saybrook*, 237 Conn. 135, 142 n.7, 676 A.2d 795 (1996); *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, 227 Conn. 175, 181 n.4, 629 A.2d 1116 (1993).

[5] The modification order authorized the receiver "to incur legal fees and expenses related to the Financing Transaction as may reasonably be necessary; however, the Receiver shall first seek an additional order of the Court before incurring fees and expenses of more than $1,500.00."

principles that govern foreclosures,[6] and (2) it acted in good faith and on the advice of counsel.

Each of these arguments suffers from the same fatal procedural defect. The court's memorandum of decision did not address them, and the receiver took no steps to rectify the record. Specifically, it did not file a motion, pursuant to Practice Book § 66-5, for articulation of the court's legal conclusions or the factual bases therefor.

On the record, the court did not discuss alternate constructions of the receivership orders or the scope of the court's own equitable prerogatives. The court made none of the findings of fact that the receiver takes as having been established. The court made no findings about the existence of a prior executory listing contract or the acceptance of such a contract by the receiver. The court made no finding that the receiver had acted in good faith or in reliance on the advice of counsel.[7]

Our Supreme Court has counseled that, if "the factual or legal basis of the trial court's decision is unclear, the appellant should file a motion for articulation pursuant to Practice Book § 4051 [now § 66-5]." *Matza* v. *Matza*, 226 Conn. 166, 187–88, 627 A.2d 414 (1993); *Walton* v. *New Hartford*, 223 Conn. 155, 165, 612 A.2d 1153 (1992). The appellant bears the responsibility of

---

[6] The receiver argues that cases such as *Seward* v. *M. Seward & Son Co.*, 91 Conn. 190, 193, 99 A. 887 (1916), and authorities such as 16 W. Fletcher, Cyclopedia of the Law of Private Corporations (1998 Rev.) § 7820, pp. 447–48, support the exercise of equitable discretion for the benefit of receivers. We are not prepared to equate the existence of such equitable discretion with a judicial mandate to exercise such authority. Second, the receiver argues that ratification was required because, if asked, a court would have preapproved its hiring of the broker and its payment of the brokerage commission. We cannot decide cases by speculating on what might have occurred had the receiver taken action that it did not in fact take.

[7] Indeed, the court's decision may be read as having rejected any claim of good faith. The court observed that the receiver's payment of a commission to an affiliate was "questionable."

clarifying the legal basis of a ruling or of asking the trial judge to rule on an overlooked matter. Practice Book §§ 60-5 and 61-1; *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 34, 727 A.2d 204 (1999), and cases therein cited. In the absence of a request for articulation, we decline to review the merits of the receiver's claim that the court improperly sustained the borrower's objection to charging the receivership estate with the payment of the real estate commission.

Finally, the receiver maintains that the court improperly required it to repay to the receivership estate the amount of the commission that the receiver lacked the authority to pay. The receiver argues that the court should not have required repayment absent a showing of negligence or fraud on the receiver's part.[8] Once again, the record is devoid of any court ruling on the merits of this contention.

The receiver does not argue that the court had some inherent responsibility to state, sua sponte, the reasons for its remedial order. Indeed, as the borrower aptly observes, without reimbursement of the receivership estate for moneys improperly charged against that estate, the borrower would be hard pressed to find a remedy for the receiver's unauthorized disbursement.

In light of the foregoing discussion, the receiver cannot prevail on its claimed entitlement to reimbursement for the contested real estate commission.

## MANAGEMENT FEES

The receiver has briefed, in perfunctory fashion, its challenge to the rejection of its postdischarge management fees. It has provided no basis, either in the court's

---

[8] The receiver cites a number of decisions from other jurisdictions, as well as a Connecticut Superior Court case, in support of this principle. Under the circumstances of this case, we need not address whether those authorities should be followed in this state.

memorandum of decision or by reference to controlling case law, for its assertion that it continued to provide reimbursable services for the receivership estate after its formal discharge. The receiver has provided no authority for the proposition that the receivership estate was required to underwrite costs incurred with respect to the receiver's unsuccessful defense of its final accounting. It has not established that, at the time of the discharge of the receivership, the parties contemplated that the receivership would incur further expenses that would be chargeable to the receivership estate.

In light of the foregoing discussion, the receiver cannot prevail on its claimed entitlement to reimbursement for expenses incurred subsequent to its discharge.

## CONCLUSION

The decision upholding two objections to the receiver's final accounting is affirmed.

In this opinion the other judges concurred.

