# PUTNAM PARK ASSOCIATES *v.* FAHNESTOCK AND COMPANY, INC.
## (AC 21789)

Schaller, Flynn and West, Js.

Argued June 4—officially released October 15, 2002

*James A. Fulton,* for the appellant-appellee (defendant).

*William J. O'Sullivan,* with whom, on the brief, was *Gale S. Dwyer,* for the appellee-appellant (plaintiff).

*Opinion*

FLYNN, J. This is an appeal from a judgment awarding $31,413.27 in liquidated damages to the plaintiff, Putnam Park Associates, for breach of a written lease contract by the defendant, Fahnestock and Company, Inc.. The trial court found that the defendant, who was the tenant under the lease, had breached its duty to pay "additional rent," over and above a base level of rent, to cover certain variable "excess expenses." The defendant claims that the trial court improperly (1) refused to hold that the plaintiff's allegations in its complaint were insufficient to sustain the judgment, (2) found that the plaintiff had provided statements to the defendant detailing the additional rent due within the time frame required in the lease and (3) found that the statements provided were certified in accordance with the provisions of the lease. The plaintiff cross appeals from that part of the court's judgment that denied the plaintiff's request for interest, late charges and attorney's fees

and costs. The plaintiff claims that (1) the court's denial of interest and late charges was clearly erroneous, and (2) the trial court abused its discretion when it denied the plaintiff's request for attorney's fees and costs. We affirm that part of the judgment awarding damages for the defendant's breach of the additional rent terms of the lease. We reverse that part of the judgment denying the plaintiff's request for interest, late charges and attorney's fees and costs.

The following undisputed facts and procedural history are relevant to our resolution of these appeals. The defendant is a corporation that leased the second floor of a commercial building from the plaintiff for a five year term from November 25, 1987, through November 24, 1992. Pursuant to the written lease agreement for a Wethersfield office building, the defendant agreed to pay the lessor, the plaintiff, as additional rent its proportional share of the cost of certain real estate property taxes to the town of Wethersfield and certain other operating expenses, all as more particularly set forth in the rider to the lease agreement, which states in relevant part as follows:

"(d) (i) On or before March 1 of each calendar year (or as soon thereafter as is practical), Landlord shall deliver to Tenant a statement, certified by a partner of Landlord, of Tenant's proportionate share of Excess Expenses for the preceding year. If Tenant's proportionate share of the actual Excess Expenses for the preceding year exceeds the aggregate of the estimated monthly payments made by Tenant during such year, Tenant shall within ten (10) days of the receipt of such statement, tender to Landlord an amount equal to such excess as Additional Rent."

This dispute arises because the plaintiff did not bill the defendant until September of 1994 for the additional rent for the years 1990, 1991 and 1992. The five year

lease between the parties had expired by its terms in November of 1992.

In count one of its two count complaint, the plaintiff claimed that for a period of three years, the defendant breached its contractual duty to pay "additional rent" to the plaintiff to cover variable "excess expenses," which included a share of the real estate taxes and operating expenses of the real property subject to the lease. The plaintiff's second count sounded in quantum meruit and was not addressed by the court.

In its answer, the defendant denied any current obligation to furnish the plaintiff with additional rent under the lease. The defendant advanced several special defenses. First, the defendant claimed that the plaintiff failed to follow the procedures described in the lease for obtaining additional rent. Specifically, paragraph (d) (i) of the rider to the lease stated: "On or before March 1 of each calendar year (or as soon thereafter as is practical), [the plaintiff] Landlord shall deliver to [the defendant] Tenant a statement, certified by a partner of Landlord, of Tenant's proportionate share of Excess Expenses for the preceding year." The defendant alleged that those procedures constituted a condition precedent to recovering additional rent. The defendant also claimed that the plaintiff waived its right to collect additional rent and that it was barred from recovering additional rent by the applicable statute of limitations and the doctrine of laches. The defendant also claimed that the plaintiff was not entitled to recover damages under its second count, which sounded in quantum meruit. Finally, the defendant alleged that it had surrendered the leased premises in 1992 and that any obligation to furnish additional rent terminated at that time.[1]

---

[1] Neither the special defense regarding quantum meruit, which the court did not decide, nor the claim that by surrender the obligation to furnish additional rent terminated are subjects of this appeal.

The court found that the plaintiff's procedures for billing additional rent did not constitute the failure of a condition precedent to recovering additional rent. Although the plaintiff did not provide statements detailing the amount of additional rent due for the calendar years 1990, 1991 and 1992 until September 12, 1994, the court found that this delay was "commercially understandable." In its memorandum of decision, the court found that the litigants had established "an atmosphere in which late statements would be tolerated" through the course of the parties' performance. For the years 1989 and 1990, the defendant paid without objection invoices for additional rent that were sent to the defendant after the time permitted in the additional rent provisions of the lease. The plaintiff alerted the defendant that it had been embroiled in a dispute with its mortgagee concerning the proper amount of additional rent, which explained the delay in providing the statements. The court also noted that the lease provisions governing the procedure for obtaining additional rent contained flexible language and that the lease did not indicate that "time was of the essence." Paragraph (d)(i) of the rider to the lease stated: "On or before March 1 of each calendar year (*or as soon thereafter as is practical*), [the plaintiff] Landlord shall deliver to [the defendant] Tenant a statement . . . ." (Emphasis added.) The court found that the plaintiff had sufficiently performed its duty to provide certified statements because a partner of the plaintiff, P. Christopher Henney, had "written and signed" the letter accompanying the statements.

The court awarded damages of $31,413.27, reflecting the amount of additional rent originally invoiced to the defendant for 1990, 1991 and 1992. The court did not award any damages for interest, late charges or attorney's fees and costs because it found that the defendant had raised and proven equitable claims, including

laches, that should bar recovery of such damages. The present appeal and cross appeal followed. Further facts and procedural history will be set forth where necessary.

I

We first address the defendant's claim that the plaintiff is not entitled to judgment because it did not plead in its complaint that it complied with the terms of the lease. The defendant claims that a lease is like any other contract and that to succeed in a breach of contract claim, a plaintiff must plead in his complaint that he has performed his obligations under the terms of the agreement. The defendant cited *Sortito* v. *Prudential Ins. Co.*, 108 Conn. 163, 167, 142 A. 808 (1928), and *New Haven Metal & Heating Supply Co.* v. *Flanagan*, 6 Conn. Sup. 488, 490 (1938), as purportedly supporting this proposition.

The trial court never decided the pleading issue in its memorandum of decision. It did not do so because when it inquired of the defendant's counsel during post-trial argument whether he was requesting the court to decide the case on that technical basis after a full trial, the defendant's counsel answered, "No."[2] The defendant never moved for an articulation or rectification from the trial judge. Appellants bear the burden of furnishing this court with an adequate record to review their claims. Practice Book § 61-10; 1 B. Holden & J.

---

[2] The full colloquy between the court and defense counsel was as follows:

"[Defendant's Counsel]: . . . A plaintiff is required to both plead and prove when he sues under a lease that he performed his obligations under the lease. That's not pleaded anywhere in this complaint. It's not pleaded in the specific terms. It's not pleaded in the general terms.

"The Court: You don't want me to dispose of the case on such a technicality, do you, counsel?

"[Defendant's Counsel]: No. I'm just saying—I'm going to get into the proof now. But it's both a requirement of pleading and proof, and at least cases in the history of the state of Connecticut had disposed of a case on that ground, so I give them to Your Honor for what they're worth."

Daly, Connecticut Evidence (2d Ed. 1988) § 60i, p. 386. Absent a clear record of the factual and legal basis underlying the trial court's resolution of an issue, we are unable to afford review. Accordingly, where the appellant claims that the trial court's decision is ambiguous, unclear or incomplete, an appellant must seek an articulation or rectification; Practice Book § 66-5; or this court will not review the claim. See *CB Commercial/Hampshire, LLC* v. *Security Mutual Life Ins. Co.*, 61 Conn. App. 144, 149–50, 763 A.2d 32 (2000), cert. denied, 255 Conn. 940, 767 A.2d 1211 (2001). That is the case with regard to this claim. See *Hunter's Ambulance Service, Inc.* v. *Shernow*, 70 Conn. App. 96, 113, 798 A.2d 991 (2002).

Further, the defendant has not cited any authority standing for the proposition that an issue not decided by the trial judge may be reviewed on appeal, where that issue was not decided at trial because the defendant conceded to the trial judge that it need not be decided. We therefore decline to review this claim.

II

The defendant next claims that the 1990, 1991 and 1992 statements billing additional rent under the lease were delivered in breach of paragraph (d) (i) of the lease rider requiring that these statements be delivered on or before March 1 of each calendar year or as soon thereafter as is practical. The court found that "a statement sufficient to meet the terms of paragraph (d) (i) was presented to the defendant as soon after the March 1 date as 'practical.' " It based this finding on several other subordinate findings. First, the parties were "sophisticated in dealing with leases and additional rent clauses of the kind involved in this case." Second, there had been a course of performance by the parties of late statements for the additional rent for years 1989 and 1990 and in which the additional rent was paid without

question, and this course of performance established an atmosphere in which the court found "late statements would be tolerated." Third, time was not specified to be of the essence in the agreement. Finally, the court noted that the defendant had been aware of ongoing disputes that the plaintiff had with its mortgage lenders. These disputes arose out of an assignment of rentals. The court found that the credibility of the plaintiff's explanation was unchallenged and was commercially understandable. It also found that the defendant was not prejudiced in any way and that the billings made were made as soon as practical.

"[O]ur resolution of the [plaintiff's] claim is guided by the general principles governing the construction of contracts. A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . *Lawson* v. *Whitey's Frame Shop*, 241 Conn. 678, 686, 697 A.2d 1137 (1997). Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . *Levine* v. *Massey*, 232 Conn. 272, [277–78], 654 A.2d 737 (1995); see *Mulligan* v. *Rioux*, 229 Conn. 716, 740, 643 A.2d 1226 (1994), on appeal after remand, 38 Conn. App. 546, 662 A.2d 153 (1995); *Bank of Boston Connecticut* v. *Schlesinger*, 220 Conn. 152,

158, 595 A.2d 872 (1991); *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corp.*, 203 Conn. 123, 131, 523 A.2d 1266 (1987); *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.*, 183 Conn. 266, 274–75, 439 A.2d 314 (1981)." (Internal quotation marks omitted.) *Pesino* v. *Atlantic Bank of New York*, 244 Conn. 85, 91–92, 709 A.2d 540 (1998).

"When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct . . . . Practice Book § 4061 [now § 60-5]; *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 752, 601 A.2d 1005 (1992); *Zachs* v. *Groppo*, 207 Conn. 683, 689, 542 A.2d 1145 (1988); *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). *Morton Buildings, Inc.* v. *Bannon*, 222 Conn. 49, 53, 607 A.2d 424 (1992)." (Internal quotation marks omitted.) *Issler* v. *Issler*, 250 Conn. 226, 236, 737 A.2d 383 (1999). Under the circumstances of this case, because the trial court did not rely solely on the written agreement but took into account the surrounding circumstances, we apply the clearly erroneous standard to the court's fact-finding.

The defendant argues that the phrase "as soon as is practical" should mean "feasible," citing the Alabama case of *Occidental Life Ins. Co. of Calif.* v. *Huff*, 43 Ala. App. 61, 63, 179 So. 2d 771 (1965), or, in the alternative, "that which is possible of reasonable performance." (Internal quotation marks omitted.) *Greene* v. *Valdese*, 306 N.C. 79, 84, 291 S.E.2d 630 (1982). It cites *Ingalls* v. *Roger Smith Hotels Corp.*, 143 Conn. 1, 6, 118 A.2d 463 (1955), for its agreement with the proposition that "[i]n construing [a lease] . . . [t]he intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument . . . ."

We first examine the pertinent lease language. The lease states that "[o]n or before March 1 of each calendar year (or as soon thereafter as is practical) Landlord shall deliver to Tenant a statement, certified by a partner of Landlord, of Tenant's proportionate share of Excess Expenses for the preceding year." Clearly, the language itself does not set out March 1 of each year as a termination date for performance since it provides in the disjunctive that billing may occur on another date if the March 1 date was not practical. Nor does the lease language fix an outside date for performance of the billing notification as to excess rent, stating only that it is to occur as soon as practical.

The court found that one of the surrounding circumstances was that the defendant had tolerated late billings for additional rent for the years 1988 and 1989.[3] The defendant asks us to categorize this as a waiver rather than a course of performance. The court did not do so in its judgment, nor will we. The course of performance the parties followed over the years is strong evidence that the parties did not interpret the lease language "as soon as is practical" in the draconian manner the defendant now urges. See 2 Restatement (Second), Contracts § 202 (4) (1981) ("[w]here an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement"); see also 11 S. Williston, Contracts (4th Ed. Lord 1999) § 32:14, pp. 491–501 ("Practical Interpretation or Construction— Given that the purpose of judicial interpretation is to ascertain the parties' intentions, the parties' own practical interpretation of the contract—how they actually

---

[3] We note that although the court referenced 1999, it clearly meant 1989 in the context in which this date appears.

acted, thereby giving meaning to their contract during the course of performing it—can be an important aid to the court. . . . Courts . . . give great weight to the parties' . . . practical interpretation . . . unless it is contrary to the plain meaning of the contract . . . .").

Just as the term "reasonable time" for performance of a contract is ordinarily a question of fact for the trier of fact, so too it was a question of fact for the trial court to determine whether the plaintiff delivered the statements in question "as soon as is practical."

"Where no time for the performance of a contract is contained within its terms, the law presumes that it is to be performed within a reasonable time. *Texas Co.* v. *Crown Petroleum Corporation*, 137 Conn. 217, 227, 75 A.2d 499 [1950]; *Santoro* v. *Mack*, 108 Conn. 683, [689–90], 145 A. 273 [1929]. *Benassi* v. *Harris*, 147 Conn. 451, 458, 162 A.2d 521 (1960); see also *Central New Haven Development Corporation* v. *La Crepe, Inc.*, 177 Conn. 212, 216, 413 A.2d 840 (1979). What is a reasonable length of time is ordinarily a question of fact for the trier. *International Tool & Gauge Co.* v. *Borg*, 145 Conn. 644, 648, 145 A.2d 750 [1958]; *Loomis* v. *Norman Printers Supply Co.*, 81 Conn. 343, 347, 71 A. 358 [1908]. *Parkway Trailer Sales, Inc.* v. *Wooldridge Bros., Inc.*, 148 Conn. 21, 26, 166 A.2d 710 (1960). . . . *Martin* v. *Martin's News Service, Inc.*, 9 Conn. App. 304, 308–309, 518 A.2d 951 (1986), cert. denied, 202 Conn. 807, 520 A.2d 1287 (1987)." (Internal quotation marks omitted.) *Schlicher* v. *Schwartz*, 58 Conn. App. 80, 86, 752 A.2d 517 (2000).

"The standard of review with respect to a court's findings of fact is the clearly erroneous standard. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses.

. . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." *United Components, Inc.* v. *Wdowiak,* 239 Conn. 259, 263, 684 A.2d 693 (1996)." (Internal quotation marks omitted.) *Schlicher* v. *Schwartz,* supra, 58 Conn. App. 87.

The court, in addition to the way the parties acted on billing and payment of the 1988 and 1989 additional rental payments, had other evidence of surrounding circumstances supporting its conclusion that the 1990, 1991 and 1992 payments had been made as soon as practical.

First, the plaintiff had made an assignment of rentals to its mortgagee. Where income producing property is financed by a first mortgage, a typical lender will demand that as part of the required documentation for the loan that the borrower assign the rentals to it as additional security for repayment of the principal and interest due. The court found that the defendant had notice of that dispute about whether additional rent had to be remitted to the mortgagee or could be retained by the plaintiffs. The court found that the negotiations between the mortgagee and the plaintiff were commercially understandable and that because of the delay caused by this dispute, the unchallenged reasons given by the plaintiff for the delay were circumstances that made the billing "as soon as [was] practical." Had the plaintiff's mortgagee declared a default in the mortgage note and deed and then accelerated payment of principal or commenced foreclosure by virtue of the plaintiff having earlier billed the 1990, 1991 and 1992 additional expenses but then failed to remit all of them to the mortgagee, the practical consequences to the plaintiff, if not to the defendant and any other tenants, would

have been enormous. We therefore do not find the court's factual findings clearly erroneous in light of the evidence and pleadings of record. There is evidence to support all of the court's findings and, after review, we are not left with the definite and firm conviction that a mistake has been made. We therefore conclude that this argument lacks merit.

## III

Finally, the defendant claims that the plaintiff failed to comply with its obligation to deliver "certified statements" to the plaintiff. The operative lease language provided in pertinent part that: "Landlord shall deliver to Tenant a statement, certified by a partner of Landlord, of Tenant's proportionate share of Excess Expenses for the preceding year." Acting by P. Christopher Henney, general partner, on September 12, 1994, the plaintiff sent to the defendant at its 110 Wall Street, New York, office the following signed communication for each of the invoices for the three years in question, which the defendant maintains satisfies the certification requirement. "Pursuant to your lease with Putnam Park Associates for office space in Wethersfield, Connecticut, enclosed please find invoices for the 'Additional Rent' due. We apologize for the delay, but because of lengthy litigation with our first mortgagee, a defunct and government-entangled savings and loan, it has been impossible for us to issue these invoices until now. Under the terms of the lease payment is to be made within 10 days.

"Should you have any questions about that which is enclosed, please do not hesitate calling us."

We note that both parties, which the court found were "sophisticated," chose not to further define the term "certified" in their lease agreement.

On appeal, the defendant claims that Henney's signed communication did not suffice to meet contractual cer-

tification requirements. It points out that the three pages of attached invoices for the additional rent were not signed.

The amounts of additional rent billed to the defendant were $10,685.85 for the year 1990, $10,879.57 for the year 1991 and $9847.85 for the year 1992.

The court found that "[t]he statements, accompanied by letters from Mr. Henney, a partner of the plaintiff, were sufficient to meet the 'certified' requirement of paragraph (d) (i) because even though the exhibits of the letters introduced into evidence were unsigned filed copies, Mr. Henney clearly testified that he had written and signed these letters."

The court found that Henney was a partner, as the contract required, and that the letter enclosing the certifications had been signed. The question before us on appeal is whether the court properly determined that the signed communication that was sent satisfied the "certified" requirement of the parties.

The plaintiff did not simply send a bill. The invoices were accompanied by a signed letter. It identified invoices for "Additional Rent" due. It explained the delay. It demanded that "under the terms of the lease payment is to be made within 10 days," which is an unequivocal statement by the plaintiff that the respective billings were what the defendant owed under the lease.

One of the dictionary definitions of certify which the defendant briefs is "to present in formal communication, esp. in a document under hand or seal as . . . being as represented."[4] We cannot say that the court's findings were clearly erroneous under those definitions.

---

[4] The defendant quoted from Webster's Third New International Dictionary.

The defendant also cites the case of *Lake* v. *Motor Vehicles Division*, 133 Or. App. 550, 554, 892 P.2d 1025, review denied, 321 Or. 246 (1995), as authority for its contention that "to certify" has been defined as the equivalent of "to warrant" and that an allegation of a certification asserts that more than a mere representation was made. Here the signed letter is more than a mere representation; it states that payment of the invoices is due "[u]nder terms of the lease." This can only mean that the writer claimed a contractual right to the moneys billed since the lease obligated the tenant to pay and gave the landlord the right to receive only the tenant's aliquot portion of excess expense sums incurred. It identifies the "invoices." The invoice documents themselves detail all of the common expenses and how the plaintiff arrived at the defendant's 1.72 percent share of them.

Under all of these circumstances, we do not conclude that the court's factual findings were clearly erroneous.

## IV

The plaintiff has cross appealed, claiming that (1) the trial court's decision to deny the plaintiff's request for interest and late charges was clearly erroneous and (2) that the trial court abused its discretion in denying the plaintiff's request for attorney's fees and late charges.

At the time of trial, the amount of interest claimed was $13,570.53, and the total of late charges was $1570.66.

On appeal, the plaintiff claims that court's failure to award interest and penalties provided for in the lease was contrary to §§ 33b and 5 of the lease and that therefore the court's decision is clearly erroneous. It seeks reversal of that decision and a remand to the

trial court for further proceedings to determine the proper allowance.

The court held that "the defendant has raised several equitable defenses, including laches, which is sufficient, in view of all the circumstances, to negate the claims of the plaintiff for interest, late charges and legal fees."

The plaintiff in its cross appeal cites *Pacelli Bros. Transportation, Inc.* v. *Pacelli*, 189 Conn. 401, 415, 456 A.2d 325 (1983). In *Pacelli*, the trial court gave no reason for not awarding attorney's fees provided in a note which was being collected by litigation, whereas here the court did give reasons. We nonetheless conclude that the reasoning in *Pacelli* is both persuasive and pertinent because it rests on the concept of the legal instrument's provisions being a whole of which the interest and collection portions are an integral part. In *Pacelli*, our Supreme Court stated: "We know of no principle whereby the amount due upon a note which has been found to be valid may be reduced because of conduct of the holder which has been found to be reprehensible but not violative of the legal rights of the maker. The provision for a reasonable attorney's fee was an integral part of the note and, like any other clause determining the amount due, could not be disregarded. Having decided that the note was valid, the [trial] court had no choice but to allow a reasonable attorney's fee as part of the debt." Id. We agree with the plaintiff that in light of the clear terms of the agreement, once the court found that the plaintiff was entitled to payment of the additional rent under the lease and that the defendant had not been prejudiced in any way by delay, reasonable attorney's fees, late charges running from the date ten days after the September 12, 1994 date of the invoice and interest from that date were due. As with the note in *Pacelli*, the phrases describing the plaintiff's right to interest, attorney's fees and late

charges were an integral part of the lease instrument.[5] If no award to reflect these liquidated damages were made, the plaintiff would not be made whole.

On the defendant's appeal, the judgment is affirmed. On the plaintiff's cross appeal, the judgment is reversed as to the refusal to award interest, attorney's fees and late charges and the case is remanded for further proceedings to determine the proper amount of interest, attorney's fees and late charges.

In this opinion the other judges concurred.

---

[5] Section 33b of the lease agreement states: "Any costs or expenses incurred by Landlord, including reasonable attorneys' fees, involved in collecting or endeavoring to collect the Rent or any part thereof or enforcing or endeavoring to enforce any rights against Tenant, including the rights set forth in this Section 33, or curing or endeavoring to cure any default of tenant, under or in connection with this Lease, or pursuant to law, including any such cost, expense or disbursement involved in instituting and prosecuting summary proceedings, shall bear interest at the highest rate permitted by law from the date such cost or expense is incurred or disbursement made, until reimbursement to Landlord by Tenant, and shall be due and payable within ten (10) days of Landlord's demand therefore, as Additional Rent."