DONALD A. MITCHELL *v.* GUARDIAN SYSTEMS, INC.
(AC 21974)

Foti, Schaller and Flynn, Js.

Argued May 6—officially released September 10, 2002

*Michael S. Lynch*, for the appellant (defendant).

*Donald A. Mitchell*, pro se, the appellee (plaintiff).

*Opinion*

SCHALLER, J. In this breach of contract action for failure to pay attorney's fees, the defendant, Guardian Systems, Inc., appeals from the judgment of the trial court rendered in favor of the plaintiff, Donald A. Mitchell. On appeal, the defendant claims that the court improperly (1) rendered judgment in accordance with the conclusion of attorney trial referee (referee) that the cause of action was not barred by the statute of limitations, (2) adopted the referee's conclusion that

evidence should not allowed concerning the second special defense because it was improperly pleaded and (3) awarded prejudgment interest on the plaintiff's claim. We affirm, in part, and reverse, in part, the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. In May, 1987, the defendant hired the plaintiff, an attorney, to represent it in a cause of action. The parties orally agreed that the defendant would pay $150 per hour for the plaintiff's services. The legal services that the plaintiff provided to the defendant included preparation for and representation during a four day trial. That trial resulted in a judgment against the defendant. The plaintiff, on behalf of the defendant, thereafter filed a motion to set aside the jury verdict, which had not been decided at the time of the hearing before the referee in the present case. The plaintiff provided to the defendant an accounting of the amount due in attorney's fees. The defendant failed to pay the amount owing. The plaintiff filed a motion to withdraw his appearance. On July 29, 1991, the court granted the plaintiff's motion.

On July 28, 1997, the plaintiff brought an action against the defendant to recover fees for services rendered while representing the defendant from May 20, 1987, to July 29, 1991. The plaintiff claimed that the parties had an agreement that the plaintiff would perform legal services for $150 per hour, plus disbursements and incidental expenses, and that the defendant would pay the plaintiff the amount due. The plaintiff's prayer for relief included the amount he claimed was owed by the defendant.[1] The defendant denied the allegations of the plaintiff's complaint and alleged by way of special defense that (1) the statute of limitations

---

[1] In his complaint, the plaintiff sought $27,202.80. During the hearing before the referee, however, he conceded that the amount owed was $23,998.20.

barred the plaintiff's claim and (2) the plaintiff had breached the agreement by not properly representing its interest in the 1987 action.

The case was referred to the referee pursuant to the fact-finding program provided by General Statutes § 52-459n.[2] On March 24, 2000, the matter was heard by the referee. On May 25, 2000, the parties filed simultaneous supplemental briefs, which included the plaintiff's request for prejudgment interest. On September 21, 2000, the referee filed with the court her report in which she found that the plaintiff had continued to represent the defendant until July 29, 1991, the date when the court in the 1987 action granted the plaintiff's motion to withdraw as counsel. The referee further found that the statute of limitations did not begin to run until after representation was terminated, which she found had occurred on July 30, 1991, the day after the plaintiff was allowed to withdraw.[3] The referee concluded that the plaintiff's cause of action to recover his fees was commenced timely on July 28, 1997. The referee also found that the defendant had not presented evidence to support its second special defense, which alleged that the plaintiff had breached the parties' contract. On

[2] General Statutes § 52-549n provides in relevant part: "[T]he judges of the Superior Court may make such rules as they deem necessary to provide a procedure in accordance with which the court, in its discretion, may refer to a fact-finder for proceedings authorized pursuant to this chapter, any contract action pending in the Superior Court, except claims under insurance contracts for uninsured and or underinsured motorist coverage, in which only money damages are claimed and which is based upon an express or implied promise to pay a definite sum, and in which the amount, legal interest or property in controversy is less than fifty thousand dollars exclusive of interest and costs. . . ."

[3] General Statutes § 52-581 provides a three year statute of limitations for executory oral contracts. *Connecticut Bank & Trust Co., N.A.* v. *Reckert*, 33 Conn. App. 702, 714, 638 A.2d 44 (1994). All other contracts are governed by a six year statute of limitations pursuant to General Statutes § 52-576. *Connecticut Bank & Trust Co., N.A.* v. *Reckert*, supra, 714. We note that the court properly determined that the applicable statute of limitations here was six years pursuant to § 52-576 because the contract had been performed.

the basis of those findings, the referee concluded that the plaintiff's cause of action was not barred by the statute of limitations and recommended that judgment enter in favor of the plaintiff for $23,998.20. See footnote 1. The referee also recommended that the defendant have an opportunity to respond to the plaintiff's request for prejudgment interest, which had been raised for the first time in the parties' supplemental briefs.

Both parties filed objections to the referee's report.[4] Neither party sought oral argument. The defendant argued that the referee improperly concluded that the plaintiff's claim was not barred by the statute of limitations and improperly failed to allow the defendant to introduce evidence in support of its second special defense. The court adopted the referee's report and rendered judgment in favor of the plaintiff. The court awarded prejudgment interest to the plaintiff. Additional facts will be provided as necessary.

We first recite our well settled standard of review. "A reviewing authority may not substitute its own findings for those of the Superior Court reviewing the findings of an attorney trial referee. . . . An attorney trial referee's determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment. . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to

---

[4] The plaintiff actually filed a motion to correct the report of the referee pursuant to Practice Book § 19-12, which was repealed effective January 1, 2000. Although procedurally improper, the court treated the plaintiff's motion as an objection to the referee's report pursuant to Practice Book § 23-57 because the plaintiff's motion sought additional findings of fact and conclusions of law. The court adopted the plaintiff's findings to the extent that the fact finder's report was deficient in setting forth individual findings of fact.

support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Holt* v. *People's Bank*, 62 Conn. App. 561, 564–65, 771 A.2d 266, cert. denied, 256 Conn. 917, 773 A.2d 944 (2001). "Attorney [referees] are empowered to hear and decide issues of fact. . . . It is axiomatic that a reviewing authority may not substitute its findings for those of the trier of the facts. . . . The trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney [referee]. . . . Where legal conclusions are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts found by the [attorney referee]." (Internal quotation marks omitted.) *Gardner* v. *Pilato*, 68 Conn. App. 448, 452, 791 A.2d 707, cert. denied, 260 Conn. 908, 795 A.2d 544 (2002).

I

The defendant first claims that the court improperly rendered judgment in accordance with the referee's conclusion that the plaintiff's cause of action was not barred by the statute of limitations. In support of its claim, the defendant actually makes a second claim challenging the referee's finding that the statute of limitations began to run on July 30, 1991, the day after the plaintiff was relieved of his obligation to represent the defendant.[5] We are not persuaded.

---

[5] The defendant raises several arguments with regard to when the cause of action accrued. Specifically, it argues that the cause of action accrued on either (1) February 4, 1991, the last date of entry for fees, (2) February 22, 1997, when the last payment was made or (3) April 10, 1991, because the court awarded statutory interest commencing on that date. In light of our conclusion that it was not clearly erroneous for the referee to have found that the statute of limitations did not begin to run until the plaintiff was relieved of his obligation to represent the defendant, it is not necessary to discuss those arguments.

"While the statute of limitations normally begins to run immediately upon the accrual of the cause of action, some difficulty may arise in determining when the cause or right of action is considered as having accrued. The true test is to establish the time when the plaintiff first could have successfully maintained an action." (Internal quotation marks omitted.) *Wynn* v. *Metropolitan Property & Casualty Ins. Co.*, 30 Conn. App. 803, 807–808, 623 A.2d 66 (1993), aff'd, 228 Conn. 436, 635 A.2d 814 (1994). "When the claim for attorneys' fees is based upon continuous legal representation, the statute of limitations does not begin to run until the legal services are complete. . . . The statute of limitations is tolled during the pendency of the continuous representation." (Citations omitted.) *Doe* v. *State*, 216 Conn. 85, 91–92, 579 A.2d 37 (1990). "Unless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client." Rules of Professional Conduct 1.3, commentary. Rule 1.16 of the Rules of Professional Conduct provides that an attorney continues to represent a client until he is discharged or the court has granted him permission to withdraw. An attorney may withdraw if "[t]he client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled . . . ." Rules of Professional Conduct 1.16 (b) (4).

We conclude that the court properly rendered judgment in accordance with the referee's conclusion that the cause of action was not barred by the statute of limitations because the statute of limitations did not begin to run until the plaintiff was relieved of his obligation to represent the defendant. After the trial in the 1987 action in which the plaintiff had represented the defendant, the plaintiff filed a motion to set aside the verdict. Unless the relationship had terminated, the

plaintiff still was obligated to pursue the motion. Although there was evidence that the defendant may have discharged the plaintiff prior to the filing of the motion to withdraw, the referee found that the plaintiff had continued to represent the defendant's interests until his motion to withdraw was granted. We cannot conclude that the referee's findings were clearly erroneous and, therefore, the court's adoption of the referee's findings was proper, and the court's the legal conclusion was legally and logically correct. Because the plaintiff continued to represent the defendant until his motion to withdraw was granted, we conclude that the court properly calculated the six year statute of limitations and concluded that the plaintiff's cause of action was not barred.

## II

The defendant next claims that the court improperly adopted the referee's conclusion that evidence should not be allowed concerning the second special defense because it was not properly pleaded. Specifically, the defendant characterizes its second special defense as a claim of "setoff" against the amounts requested by the plaintiff. The defendant argues, therefore, that the referee improperly refused to allow it to submit evidence concerning the breach of contract alleged in the second special defense as a way to "set off" any damages.

The following additional facts apply to the defendant's claim. The defendant's second special defense asserted that the plaintiff had breached the contract by not properly representing the defendant's interest in the 1987 action, *Guardian Systems, Inc.* v. *National Guardian*, Superior Court, Docket No. CV-87-0292300S. During the hearing before the referee, the defendant attempted to cross-examine the plaintiff regarding his competence in representing it and, during direct exami-

nation of the defendant, offered testimony concerning what it claimed was inadequate representation. The plaintiff objected, arguing that the questioning was improper because the issue was whether the defendant had failed to pay for the plaintiff's services as contracted. The defendant argued that the questioning was to prove his second special defense that the plaintiff had breached the contract by not representing its interests properly in the 1987 action. The referee sustained the plaintiff's objection to any questioning regarding the plaintiff's competence or adequacy of representation, concluding that the second special defense was improperly pleaded and constituted a separate cause of action that should have been pleaded as a counterclaim. The defendant thereafter filed with the court an objection to the referee's report, claiming that the referee's conclusion was improper.

The court agreed with the referee and concluded that the defendant's breach of contract claim was not an appropriate special defense. The court further concluded that the evidence sought to be introduced appeared to be in the nature of an attempt to establish attorney incompetence or malpractice, which required expert testimony.

"As a general rule, facts must be pleaded as a special defense when they are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." *Bennett* v. *Automobile Ins. Co. of Hartford*, 230 Conn. 795, 802, 646 A.2d 806 (1994). "No facts may be proved under either a general or special denial except such as to show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. . . ." Practice Book § 10-50. If a party seeks to introduce evidence under a denial "which is consistent with a prima facie case, but nevertheless

would tend to destroy the cause of action, the 'new matter' must be affirmatively pleaded as a special defense." *Pawlinski* v. *Allstate Ins. Co.*, 165 Conn. 1, 6, 327 A.2d 583 (1973).

We conclude that the court properly adopted the referee's conclusion that evidence should not be allowed concerning the second special defense because it was improperly pleaded. Practice Book § 10-50 required the defendant's special defense to be consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff had no cause of action. In the defendant's second special defense, it failed to allege facts that were consistent with the plaintiff's complaint to show that the plaintiff had no cause of action. The facts alleged in the defendant's second special defense are not the same facts as that alleged in the plaintiff's complaint. The defendants' second special defense therefore was legally insufficient.[6] We conclude therefore that the court's conclusion affirming the referee's decision was legally and logically correct.

## III

The defendant's final claim is that the court improperly awarded prejudgment interest on the plaintiff's claim. The defendant argues that the award of prejudgment interest was improper because no claim for interest was contained in the complaint or the prayer for relief, and no evidence was offered in the hearing.[7] We conclude that the court improperly found that the plaintiff was entitled to prejudgment interest.

---

[6] We note that pursuant to Practice Book § 10-54, the defendant's second special defense that the plaintiff breached the contract would have been properly pleaded as a counterclaim rather than as a special defense.

[7] The defendant also argued that the court improperly awarded prejudgment interest on the plaintiff's claim because the referee prevented the defendant from producing any evidence pursuant to its second special defense, which would have demonstrated that there was good and justifiable reasons for the defendant's withholding of payment. In light of our conclusion on the second claim, that argument has no merit.

We first note that "[t]he decision to award interest is to be made in view of the demands of justice rather than through the application of any arbitrary rule. . . . The real question in each case is whether the detention of the money is or is not wrongful under the circumstances. . . . The person best able to make this equitable determination is the attorney referee who heard the case and thus is most familiar with the facts." (Citation omitted; internal quotation marks omitted.) *Pilato* v. *Kapur*, 22 Conn. App. 282, 284, 576 A.2d 1315, cert. granted on other grounds, 216 Conn. 813, 580 A.2d 59 (1990) (appeal withdrawn). As an element of damages, the decision as to "whether interest should be awarded is within the province of the trier of fact." Id., 283–84.

We conclude that the court improperly awarded prejudgment interest on the plaintiff's claim. The plaintiff requested prejudgment interest in his supplemental brief, which was presented to the referee approximately two months after the matter came before the referee. In response to that request, the referee recommended only that "[t]he defendant should have an opportunity to respond to the requested interest, which was raised for the first time in the brief." The referee did not make any specific finding as to prejudgment interest.

The court, however, determined that the defendant's failure to pay the plaintiff was wrongful and that the plaintiff was entitled to prejudgment interest. That was improper because, as our case law states, the trier of fact, here, the referee, is the person who must determine whether interest should be awarded. Although the court properly could determine that the failure to pay was wrongful, it could not award the prejudgment interest. Rather, the court could have considered remanding the case to the referee for a decision on the interest issue on the basis of a ruling that the failure to pay was wrongful. We cannot order such a remand at this point in the proceedings, however, because the referee did

not make a specific finding as to prejudgment interest and because the court did not address the recommendation. In light of those facts, to order a remand now would be tantamount to allowing the plaintiff to have a second chance to litigate the prejudgment interest issue.

The judgment is reversed only as to the award of prejudgment interest and the case is remanded with direction to modify the judgment by vacating the award of prejudgment interest. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.