THOMAS C.C. SARGENT, TRUSTEE *v.*
ANNE LENA SMITH
(AC 22997)

Dranginis, Bishop and Dupont, Js.

Argued May 6—officially released August 12, 2003

*Hale C. Sargent,* for the appellant (plaintiff).

*Sabato P. Fiano,* with whom was *Stephen F. Donahue,* for the appellee (defendant).

*Opinion*

DUPONT, J. In this action alleging breach of a lease agreement, the plaintiff, Thomas C.C. Sargent, trustee, appeals from the judgment of the trial court rendered in favor of the defendant, Anne Lena Smith. On appeal, the plaintiff claims that the court improperly accepted the conclusion of the attorney trial referee (referee) that (1) a 1996 mortgage foreclosure action against the plaintiff extinguished the defendant's liability under her lease with him and (2) he failed to establish damages. We agree with the plaintiff and reverse the judgment of the trial court.

The referee found the following relevant facts. On August 12, 1988, the defendant entered into a written lease with the plaintiff for the rental of property he owned. In the lease, the defendant agreed to pay all "Real Estate Taxes," which included "all taxes and *assessments* levied, assessed or imposed at any time by any governmental authority." The defendant further agreed that it was a " 'net lease' in that the intention [thereof] is that the rent and additional rents . . . shall be net to the landlord."

Water charges from the Bridgeport water pollution control authority (authority) began to accrue on November 30, 1988. At all times throughout the duration of the lease, the authority billed the plaintiff for water. On November 15, 1991, the plaintiff refinanced the property. In doing so, the plaintiff personally guaranteed a note in favor of, and transferred a mortgage deed to, Gateway Bank (Gateway). He also executed an assignment of leases[1] and an assignment of sales, proceeds, deposits and earnest money to Gateway.

---

[1] The assignment of leases was exercisable, at the mortgagee's option, on the default of the mortgagor.

Subsequently, the plaintiff defaulted on the note, and, thus, Praedium Chief, LLC, an assignee of the mortgage,[2] initiated a foreclosure action in February, 1996.[3] During the pendency of the foreclosure action, the court appointed a receiver of rents (receiver), who was directed by court order on May 12, 1997, to pay the authority the entire balance of the outstanding water charges, which totaled $40,881.37, and were paid, on June 5, 1997.

On August 25, 1997, the court rendered a judgment of strict foreclosure pursuant to a stipulation under which a subsequent assignee of the mortgage, Adare, LLC, waived the deficiency[4] and agreed that the remaining funds held by the receiver, minus certain fees and costs,[5] would be paid to the plaintiff, who agreed to an accelerated law day. Thereafter, the plaintiff initiated the present action against the defendant to recover the sum of $40,881.37, which the receiver was ordered to pay to cover the authority's charges. Additional facts will be set forth as necessary.

On the basis of those facts, the referee concluded, and the court accepted the conclusion, that the plaintiff was not entitled to recover from the defendant the amount of the payment to the authority because the foreclosure action had extinguished all obligations under the lease and the plaintiff had failed to prove he would have ultimately been entitled to the money.

We review the referee's factual findings under the clearly erroneous standard. *Mitchell* v. *Guardian Sys-*

[2] The mortgage later was assigned to Adare, LLC, which was substituted as the plaintiff in the foreclosure action.

[3] The defendant, as a lessee, was named as a defendant in the foreclosure action.

[4] In its foreclosure judgment, the court valued the property at $300,000 and the plaintiff's debt at $404,815.19.

[5] Although the referee did not specifically find, testimony established that the fees and costs totaled approximately $7500, and the remaining funds distributed to the plaintiff totaled approximately $29,000.

*tems, Inc.*, 72 Conn. App. 158, 162, 804 A.2d 1004, cert. denied, 262 Conn. 903, 810 A.2d 269 (2002). "[B]ecause the attorney trial referee does not have the powers of a court and is simply a fact finder, [a]ny legal conclusions reached by an attorney trial referee have no conclusive effect. . . . [T]he legal opinions of [an attorney trial referee], like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment." (Internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Oxford Health Plans, Inc.*, 263 Conn. 191, 202, 819 A.2d 227 (2003).

"The trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney [referee]. . . . Where legal conclusions are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts found by the [attorney referee]." (Internal quotation marks omitted.) *Mitchell* v. *Guardian Systems, Inc.*, supra, 72 Conn. App. 163.

Essentially, the primary issue raised in this appeal is what effect, if any, the plaintiff's mortgage, the foreclosure action and the subsequent judgment of strict foreclosure had on the lease agreement between the plaintiff and the defendant. That is a question of law over which our review is plenary. See *Short* v. *Connecticut Bank & Trust Co.*, 60 Conn. App. 362, 367, 759 A.2d 129 (2000).

To decide that issue, we must first ascertain what the lease agreement between the parties obligated them to do. "[A] lease is like any other contract . . . ." *Putnam Park Associates* v. *Fahnestock & Co.*, 73 Conn. App. 1, 6, 807 A.2d 991 (2002). "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal

quotation marks omitted.) Id., 8. "[W]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Levine* v. *Massey*, 232 Conn. 272, 277–78, 654 A.2d 737 (1995).

Paragraph nine of the lease between the parties, in part, states that "[u]tilities and services furnished to the demised premises for the benefit of the [defendant] shall be provided and paid for as follows: water by the [defendant] . . . ." The attached rider further states in paragraph two that "[i]n addition to the rent and additional rent, [the defendant] agrees to pay . . . the Real Estate Taxes assessed and billed against the leased premises," which includes "all taxes and assessments levied, assessed or imposed at any time by any governmental authority upon or against the Premises . . . ." Additionally, the rider states that "[t]he [defendant] agrees that this is a 'net lease' and that the intention hereof is that the rent and additional rent herein specified shall be net to the [plaintiff] without any offset deductions or costs . . . ."

Therefore, as the referee concluded, which conclusion the court adopted, and the parties agree, the clear and unambiguous language of the lease requires that the defendant pay the water and sewage charges assessed by the city of Bridgeport. Having concluded that it was the defendant's obligation to pay the authority's charges under the lease, we next consider what effect the mortgage had on that contractual obligation.

Connecticut follows the "title theory" of mortgages, which provides that on the execution of a mortgage on real property, the mortgagee holds legal title and the mortgagor holds equitable title to the property. See *Barclays Bank of New York* v. *Ivler*, 20 Conn. App. 163, 166, 565 A.2d 252, cert. denied, 213 Conn. 809, 568 A.2d

792 (1989); see also *Stein* v. *Hillebrand,* 240 Conn. 35, 43 n.7, 688 A.2d 1317 (1997); *Conference Center Ltd.* v. *TRC,* 189 Conn. 212, 218–19, 455 A.2d 857 (1983). As the holder of equitable title, also called the equity of redemption, the mortgagor has the right to redeem the legal title on the performance of certain conditions contained within the mortgage instrument. *Barclays Bank of New York* v. *Ivler,* supra, 166. The mortgagor continues to be regarded as the owner of the property during the term of the mortgage. *Desiderio* v. *Iadonisi,* 115 Conn. 652, 654, 163 A. 254 (1932).

Thus, in this case, on the signing of the mortgage deed, the plaintiff held equitable title and Gateway held legal title to the property. The plaintiff continued to hold equitable title and the right of redemption until the judgment of strict foreclosure on September 25, 1996, which cut off his redemption rights and vested unconditional title in Adare, LLC, a successor mortgagee. See *Barclays Bank of New York* v. *Ivler,* supra, 20 Conn. App. 166.

When the plaintiff mortgaged his premises to Gateway, he executed an assignment of leases and rents as additional security for the mortgage, which assignment was exercisable on his default. That assignment, however, had no effect on the defendant's lease obligations to the plaintiff or on his right to enforce the lease.

"[L]iability between the landlord and parties with a leasehold interest is predicated on privity of estate or privity of contract. 1 M. Friedman, [Leases (3d Ed. 1990)] § 7.501a, p. 350." *Gateway Co.* v. *DiNoia,* 232 Conn. 223, 234, 654 A.2d 342 (1995). "Privity of contract rests on agreement, whereas privity of estate rests on an interest in the leased premises." (Internal quotation marks omitted.) Id. In this case, the defendant's possession of the premises created privity of estate with the plaintiff and her execution of the lease, which included

an undertaking to pay the authority's charges, created privity of contract between her and the plaintiff. See id.

Thus, the question becomes whether the foreclosure action, the appointment of a receiver of rents or the eventual judgment of strict foreclosure destroyed either the privity of estate or privity of contract between the plaintiff and the defendant so as to extinguish his breach of lease action.

In this case, the initiation of the foreclosure action did not relieve the defendant of her obligations under the lease. See generally *Conference Center Ltd.* v. *TRC*, supra, 189 Conn. 218–28. The defendant continued to pay rent, and the plaintiff and mortgagee continued to allow her to remain in possession of the premises.

The appointment of the receiver of rents and the court's order for the receiver to pay the authority's charges also did not extinguish either the defendant's obligations under, or the plaintiff's benefit of, the lease. "When a receiver is appointed in a foreclosure action to take charge of the property, he holds it as an arm of the court and his possession is not that of the mortgagee." *Desiderio* v. *Iadonisi,* supra, 115 Conn. 655; see also *New Haven Savings Bank* v. *General Finance & Mortgage Co.,* 174 Conn. 268, 270, 386 A.2d 230 (1978). "[T]he mortgagee has no claim upon the income and profit in [the receiver's] hands as such . . . they still belong to the mortgagor . . . ." (Internal quotation marks omitted.) *New Haven Savings Bank* v. *General Finance & Mortgage Co.,* supra, 270.

The funds held in receivership, however, are for the protection of the mortgagee's rights, and, thus, a "court has the power by its orders to make such application of them as justice and equity require and it may order their disposition in such a way as to aid in discharging the obligations of the mortgagor to the mortgagee." *Desiderio* v. *Iadonisi,* supra, 115 Conn. 655. Therefore,

"it lies in the power of the court . . . to direct the receiver . . . to discharge taxes due upon the property, whether those taxes accrued before or after his appointment." Id., 656. That was done in the foreclosure action when the court ordered the receiver to pay the authority's charges.

Because the funds in the hands of the receiver still belonged to the plaintiff; see *New Haven Savings Bank* v. *General Finance & Mortgage Co.*, supra, 174 Conn. 270; the effect of the court's order was that the plaintiff had paid the authority's charges, which the defendant contractually was obligated to pay by virtue of her lease with him. That obligation to pay the charges accrued prior to the judgment of strict foreclosure, which, contrary to the defendant's argument, is the time at which the lease between the plaintiff and the defendant was extinguished. See *First Federal Bank, FSB* v. *Whitney Development Corp.*, 237 Conn. 679, 689–90, 677 A.2d 1363 (1996).

The referee found, and the court accepted, that "the plaintiff failed to prove by a preponderance of the evidence that the moneys were held for the benefit of the plaintiff or that the plaintiff would have ultimately been entitled to the moneys." We conclude that this "finding" was based on an improper application of the law.

First, as previously discussed, the money in the hands of the rent receiver belonged to the plaintiff as the mortgagor in the foreclosure action. Although, the money was held to protect the mortgagee's interest, any payout was applied to the plaintiff's obligations to his mortgagee. See *Desiderio* v. *Iadonisi*, supra, 115 Conn. 655. Thus, the payout from the receiver was equivalent to the plaintiff himself making the payment. The defendant's argument that the plaintiff was not damaged because the money ultimately would have been paid to the mortgagee in the foreclosure judgment

is to no avail. First, the mortgagee waived any claim to a deficiency,[6] and the plaintiff received the remaining funds in the account. Second, the mortgagee is not a party to this action, and any right it may have in the $40,881.37 payout is not at issue here. Last, the plaintiff paid $40,881.37 in authority charges, via the rent receiver, for the benefit of the defendant, who was obligated to pay it by the terms of the lease.

Therefore, we conclude that neither the mortgage, nor the institution of the foreclosure action, nor the judgment of strict foreclosure extinguished the defendant's obligations under the lease to pay the authority's charges and that the defendant's failure to pay the charges damaged the plaintiff.

The judgment is reversed and the case is remanded with direction to render judgment for the plaintiff in the amount of $40,881.37.

In this opinion the other judges concurred.

---

[6] The defendant argues that the deficiency would not have been waived if the $40,881.37 payout was not made. We cannot assess that argument because it is speculative. The waiver of the deficiency was part of a settlement, and we have no way of knowing whether the terms of the settlement would have been different had the authority's charges been paid not from the receiver's funds, but by the defendant.