## MILFORD PAINTBALL, LLC, ET AL. *v.* WAMPUS MILFORD ASSOCIATES, LLC, ET AL.
### (AC 28926)

Flynn, C. J., and Beach and McDonald, Js.

Argued September 11, 2008—officially released September 15, 2009

*John F. Conway,* for the appellant (named defendant).

*Stephen J. Conover,* for the appellees (plaintiffs).

*Opinion*

PER CURIAM. In this breach of lease action, the defendant Wampus Milford Associates, LLC,[1] appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiffs Milford Paintball, LLC, (Milford Paintball) and Kathleen Rorick,[2] a

---

[1] The plaintiffs originally brought this action against Wampus Milford Associates, LLC, and three additional defendants. The plaintiffs ultimately withdrew their claims against the three additional defendants. Wampus Milford Associates, LLC, is now the sole defendant. All references to the defendant are therefore to Wampus Milford Associates, LLC.

[2] The defendant claims that the court's factual finding that Rorick was a party to the lease agreement is clearly erroneous. The defendant makes a general statement in its brief that Rorick may not have standing with respect to her unfair trade practices claim due to this erroneous factual finding. Because we are remanding the case for a new trial, we leave this determination for the trial court.

member of Milford Paintball. On appeal, the defendant claims that the trial court improperly concluded that the lease agreement had never become effective and, as a result, improperly found in favor of the plaintiffs on their complaint and failed to find in favor of the defendant on its special defenses and counterclaim. The dispositive issue on appeal is whether the lease agreement was ever effective. We conclude that the lease agreement was effective at the time of its signing and delivery, and, accordingly, reverse the judgment of the trial court and remand the case for a new trial.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The plaintiffs entered into a lease agreement with the defendant to rent a portion of the defendant's building for use as an indoor paintball field. The plaintiffs gave the defendant a security deposit, as required by the lease. Section 3.06 of the lease agreement required the defendant to make substantial interior renovations to the building for it to be a suitable location for an indoor paintball field (landlord's work) within ninety days of receiving notice from the plaintiffs that they had obtained zoning approval. On April 23, 2004, the plaintiffs gave notice to the defendant that zoning approval had been obtained. As of January 4, 2005, more than ninety days after receipt of notice, the defendant had not begun, let alone substantially completed, the required landlord's work.

The plaintiffs commenced this action by complaint dated January 27, 2005. In their complaint, the plaintiffs asserted claims of a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., breach of a lease, fraud and restitution. The plaintiffs alleged that the defendant breached the lease when it failed to perform the landlord's work within ninety days of receipt of the zoning approval

notice. They further alleged that the defendant's principals used the defendant to "[engage] in a scheme . . . to enhance the value of the [p]roperty by securing long term leases and large security deposits from tenants, including but not limited to Milford Paintball, under false pretenses that [the defendant] was willing, ready and able to perform [b]uilding renovations for tenants," in violation of CUTPA. The plaintiffs further sought restitution of a $32,083.52 security deposit paid to the defendant.

The defendant subsequently filed an answer, special defenses and a counterclaim. The defendant asserted two special defenses. First, it averred that if and to the extent that it did not complete performance of the landlord's work, it nevertheless was not in breach of the lease because Milford Paintball failed to provide it with written notice and an opportunity to cure, as required under the terms of the lease. Second, the defendant contended that it was discharged from its remaining duties under the lease because Milford Paintball anticipatorily breached the lease. In its counterclaim, the defendant asserted that Milford Paintball anticipatorily breached its obligations under the lease, thereby causing the defendant to sustain money damages.

On May 31, 2008, after a trial to the court, the court issued a memorandum of decision in which it found in favor of the plaintiffs on their complaint. In doing so, the court implicitly found against the defendant on its special defenses. See *Hartford National Bank & Trust Co.* v. *Kotkin*, 185 Conn. 579, 580 n.1, 441 A.2d 593 (1981). The court found against the defendant on its counterclaim. The court relied primarily on § 1.10 of the lease agreement, which defines the "lease commencement date" as the "date when [the defendant] delivers possession of Premises to [the plaintiffs] with Landlord's Work substantially completed." The court

reasoned that this lease provision made it clear that the lease did not become effective until the defendant delivered the premises to the plaintiffs with the landlord's work substantially completed. It thus determined that the defendant's undertaking to repair and to modify the interior of the leased premises to accommodate a paintball field was a condition precedent to the commencement of the lease term. It further found that the defendant's failure to honor the condition precedent excused subsequent performance by the plaintiffs. The court declined to award the plaintiffs additional compensation on their claim of fraud. The court determined that the defendant's counterclaim failed because the notice requirements of the lease never became operable, and, as a result, the lease commencement date never arrived. It further determined that the conduct of the defendant in continuing to delay the renovation work after receiving a substantial security deposit from the plaintiffs and being informed that their delay was creating mounting expenses for the plaintiffs amounted to a violation of CUTPA. The court ordered the defendant to pay to the plaintiffs restitution and attorney's fees. This appeal followed.

On appeal, the defendant claims that the court improperly interpreted the lease by concluding that, under § 1.10 of the lease, the provisions of the lease agreement did not come into effect until the defendant had substantially completed the landlord's work. The defendant argues that the court improperly concluded that the provisions of the lease providing for written notice of default and an opportunity to cure any failure to substantially complete the landlord's work under § 14.07 did not apply because the lease agreement had not become effective.

We begin by setting forth our well settled standard of review. "[A] lease is like any other contract . . . ." (Internal quotation marks omitted.) *Sargent* v. *Smith*,

78 Conn. App. 691, 694, 828 A.2d 620 (2003), rev'd on other grounds, 272 Conn. 722, 865 A.2d 1129 (2005). "When construing a lease, we bear in mind three fundamental principles: (1) The intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. . . . Where contract language is clear and unambiguous, the question of contractual intent presents a question of law for the court . . . ." (Internal quotation marks omitted.) *Jo-Ann Stores, Inc.* v. *Property Operating Co., LLC*, 91 Conn. App. 179, 189, 880 A.2d 945 (2005).

In the present case, the terms at issue in the lease are clear and unambiguous. Section 3.01 of the lease agreement provides that "[t]he *Lease Term* shall begin on the Lease Commencement Date subject to the Zoning Approval Contingency set forth in Section 3.02." (Emphasis added.) The lease commencement date is defined in § 1.10 of the lease, as the "[d]ate when [the defendant] delivers possession of Premises to [the plaintiffs] with Landlord's Work substantially completed." The court interpreted the *lease commencement date* to mean the date on which all the contractual obligations within the lease agreement would become *effective*. This interpretation, however, is contrary to the express provisions of the lease. Section 3.01 states that the *lease term*—not to be confused with the date on which the lease agreement becomes binding and effective—begins on the date on which the defendant delivers possession to the plaintiffs with the landlord's work substantially completed. The lease term is defined in § 1.09 of the lease agreement as "[s]ixty (60) months

running from the Lease Commencement Date through and including the Termination Date" plus an option to extend. This definition describes when the power to possess the premises and the obligation to pay rent would commence and terminate but does not address the issue concerning the date on which other contractual provisions of the lease agreement would become binding and effective.

Other provisions of the lease agreement clearly address the issue of when the lease agreement would become binding and effective. Section 17.13 of the lease agreement states that the lease agreement "shall not be *binding* upon either party until executed and delivered by both parties." (Emphasis added.) Section 17.15 of the lease agreement states that the lease "shall not be *effective* until execution and delivery by both [parties]." (Emphasis added.) These provisions of the lease provide that the lease agreement shall become binding and effective on the date on which the lease was executed, which was February 10, 2004.

Additionally, other terms of the lease agreement specifically provide for two contingencies that, if not met within certain time frames following the lease execution date, would give the plaintiffs the right to terminate the lease agreement upon written notice and the right to the return of some or all of their security deposit. Section 3.02 (a) of the lease agreement provided that if the plaintiffs are unable to obtain zoning approval within 120 days after the lease execution date, they have the right to terminate the lease on written notice and the right of the return of their security deposit. Section 3.02 (b) of the lease agreement provides that the plaintiffs have the right to terminate the lease and to have some or all of their security deposit returned if they are unable to obtain financing within sixty days of the lease execution date.

We do not reach the defendant's further claims that the court improperly found in favor of the plaintiffs on their complaint and failed to find in favor of the defendant on its special defenses and counterclaim. The court's judgment in favor of the plaintiffs on their complaint and against the defendant on its special defenses and counterclaim is based on the determination that none of the terms of the lease agreement was effective. The court concluded that its examination of the lease agreement, in which it determined that the lease had never become effective, was determinative of the case. As a result, the court's findings were dependent on its improper interpretation of the lease agreement. The court effectively made no factual findings or conclusions concerning the application of the terms of the lease agreement to the facts of this case. In the absence of such factual findings, we cannot determine whether the court's judgment in favor of the plaintiffs on their complaint and against the defendant on its special defenses and counterclaim was proper. Thus, we do not decide if the provision, § 14.07 of the lease agreement, requiring notice of default and opportunity to cure that default applies rather than § 3.06, which does not require such notice of default and such opportunity to cure.

The judgment is reversed and the case is remanded for a new trial.