******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GAYLE A. BELLINI *v.* PATTERSON OIL COMPANY
(AC 35712)

Gruendel, Beach and Bishop, Js.

*Argued September 19, 2014—officially released March 24, 2015*

(Appeal from Superior Court, judicial district of
Litchfield, Trombley, J.)

*Gregory T. Nolan*, with whom, on the brief, was *Patsy
M. Renzullo*, for the appellant (plaintiff).

*Lisa A. Zaccardelli*, for the appellee (defendant).

*Opinion*

BISHOP, J. In this breach of lease action, the plaintiff, Gayle A. Bellini, appeals from the trial court's grant of summary judgment in favor of the defendant, Patterson Oil Company. On appeal, the plaintiff claims that the court incorrectly determined that the defendant was a month-to-month tenant at the time it vacated the premises. We disagree and, accordingly, affirm the judgment of the trial court.

The court's memorandum of decision and the record reveal the following undisputed facts and procedural history. By lease agreement dated November 1, 1989, the plaintiff, as lessor, and the defendant, as lessee, agreed to the lease of the commercial real estate (premises).[1] The parties executed an addendum to the lease on October 16, 1990. Without otherwise modifying the lease agreement, including the addendum, the parties modified the amount of rent due under the lease from time to time. Pursuant to the lease and the addendum, the initial term of the lease was for a period of five years beginning November 1, 1989, and ending on October 31, 1994. Pursuant to § 18 of the lease agreement, the initial term of the lease was to be automatically extended for an additional five year term if the parties negotiated the rent ninety days prior to the expiration of the initial lease. Furthermore, § 18 contained a provision that the lease would automatically renew absent ninety days written notice of intent to terminate the lease by either the lessor or the lessee. Prior to the end of the first five year term, on August 31, 1994, the parties agreed by letter to a "one year extension of the lease" and a modification of the amount of rent from November 1, 1994 through October 1, 1995. Subsequently, on October 10, 1995, the parties agreed to a six month lease extension from November 1, 1995 through April 30, 1996. In neither the 1994 nor the 1995 correspondence did either party make reference to § 18 of the original lease. Thereafter, from April 30, 1996, until April 30, 2011, the defendant remained on the premises and tendered payment each month as rent, and the plaintiff accepted each tender as the payment of rent. On or about April 22, 2011, the plaintiff received written notice from the defendant of its intention to vacate the premises on April 30, 2011, and on April 30, 2011, the defendant left the premises.

On May 26, 2011, the plaintiff served a complaint on the defendant, which was subsequently revised on August 15, 2011. In the revised complaint, the plaintiff alleged that the defendant breached the lease by abandoning the premises prior to the expiration of the extended lease term, which, she contends, expired on October 31, 2014. The plaintiff alleged that, as a result of the defendant's breach, she suffered a loss of rent totaling $126,000, along with substantial sums for utilities, taxes, and insurance for the remainder of the lease

term. In response, the defendant filed an answer and special defenses. In its special defenses, the defendant contended, inter alia, that it had become a month-to-month tenant, and that, as such, it was not required to provide ninety days written notice under the terms of the month-to-month tenancy.

On November 5, 2012, the plaintiff moved for summary judgment, alleging that § 18 of the lease agreement remained in effect throughout the parties' relationship, that the lease had renewed on November 1, 2009, for another five year term and, accordingly, that the defendant breached the lease agreement by vacating the premises prior to October 31, 2014. The defendant filed an objection to the motion as well as a cross motion for summary judgment. Through these pleadings, the defendant argued that through the August 31, 1994 letter and the October 10, 1995 letter, the parties effectively modified the length of the renewal term of the lease and that, by such conduct, they did not renew the original lease for an additional five year term in accordance with § 18. In short, the defendant claimed that the parties, by their conduct, varied the terms of the original lease and that their extension agreements in 1994 and 1995 did not implicate the renewal term of the original lease. The defendant further alleged that, as a consequence, it became a month-to-month tenant and was occupying the premises in such capacity when it vacated the premises.

In a memorandum of decision filed May 7, 2013, the court concluded, contrary to the plaintiff's contentions, that the defendant was a month-to-month tenant at the time it vacated the premises. The court thus granted the defendant's cross motion for summary judgment and, consequently, denied the plaintiff's motion for summary judgment. This appeal followed.

The plaintiff contends that the court improperly concluded that there was no genuine issue of material fact as to whether the defendant was a month-to-month tenant at the time it vacated the premises and, thus, was entitled to judgment as a matter of law. The standard of review governing such claims is well settled. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the

facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Weiss* v. *Weiss*, 297 Conn. 446, 458, 998 A.2d 766 (2010). "Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Bonington* v. *Westport*, 297 Conn. 297, 305, 999 A.2d 700 (2010).

The legal principles governing this breach of lease action also are well established. "[A] lease is like any other contract . . . . When construing a lease, we bear in mind three fundamental principles: (1) The intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. . . . Where contract language is clear and unambiguous, the question of contractual intent presents a question of law for the court . . . ." (Citation omitted; internal quotation marks omitted.) *Milford Paintball, LLC* v. *Wampus Milford Associates, LLC*, 117 Conn. App. 86, 89–90, 978 A.2d 118 (2009). "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . A court will not torture words to import ambiguity when the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Internal quotation marks omitted.) *General Electric Capital Corp.* v. *Transport Logistics Corp.*, 94 Conn. App. 541, 545, 893 A.2d 467 (2006).

On the basis of our review of the August 31, 1994 letter and the October 10, 1995 letter, we conclude that the relevant language of both letters is not ambiguous and, thus, clearly expresses the intent of the parties. Approximately sixty days before the initial five year term ended, on August 31, 1994, the parties agreed by letter to a "one year lease extension" and a modification of rent. Furthermore, on October 10, 1995, the parties agreed by letter to "further extend the present one year extension of [the] lease dated November 1, 1989 pertaining to the [premises] for a period of six months; November 1, 1995 through April 30, 1996." In these letters, the parties did not mention § 18 or the possibility of renewing the lease for an additional five year term. Therefore, we conclude that, pursuant to the parties' 1994 and 1995 exchanges of correspondence, the parties effectively abrogated § 18 of the original lease and,

instead, formed a new agreement regarding the term of their lease agreement. See *Riverside Coal Co.* v. *American Coal Co.*, 107 Conn. 40, 47, 139 A. 276 (1927); *Cameron* v. *Avonridge, Inc.*, 3 Conn. App. 230, 233, 486 A.2d 661 (1985). As a consequence, the terms of the defendant's obligations under the parties' new arrangement extended from November 1, 1994 through October 1, 1995, and from November 1, 1995 through April 30, 1996.

It is undisputed that, thereafter, from April 30, 1996, until April 30, 2011, the defendant remained on the premises and tendered payment to the plaintiff each month as rent, and the plaintiff accepted each tender as such. The court heard no evidence that, throughout this extended period, the parties were acting pursuant to their time limited agreements of 1994 and 1995. Rather, this conduct evidences a month-to-month tenancy. See, e.g., *W. G. Maltby, Inc.* v. *Associated Realty Co.*, 114 Conn. 283, 288, 158 A. 548 (1932); *Williams* v. *Apothecaries Hall Co.*, 80 Conn. 503, 505–506, 69 A. 12 (1908); *Bridgeport* v. *Barbour-Daniel Electronics, Inc.*, 16 Conn. App. 574, 579, 548 A.2d 744, cert. denied, 209 Conn. 826, 552 A.2d 432 (1988); see generally *Welk* v. *Bidwell*, 136 Conn. 603, 607–609, 73 A.2d 295 (1950); see also General Statutes §§ 47a-3b and 47a-3d. On the basis of the defendant's status as a month-to-month tenant, it was under no obligation to continue paying rent once it provided notice of its intent to vacate the premises in April, 2011. See *Rokalor, Inc.* v. *Connecticut Eating Enterprises, Inc.*, 18 Conn. App. 384, 388–89, 558 A.2d 265 (1989) ("[w]hen the tenancy ends, the tenant is released from his obligations under the lease and is, therefore, no longer obliged to pay rent"). Accordingly, we conclude that the trial court properly granted summary judgment in favor of the defendant.[2]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The leased premises consisted of a full service gasoline station complete with parking spaces and service bays located at 161-164 Main Street, Winsted.

[2] In light of the foregoing analysis, we need not reach the question of whether the automatic renewal provision of § 18 was unenforceable as determined by the trial court.